No. 22833.
No. 22834.

CHARLES L. TEMPLE, MANAGER OF REVENUE, CITY AND
COUNTY OF DENVER, STATE OF COLORADO *v.*
ARTHUR VENNERI COMPANY.
(470 P.2d 576)

Decided June 8, 1970.     Opinion modified and as modified rehearing
denied June 22, 1970.

MAX P. ZALL, W. KEITH PETERSON, for plaintiff in error.

HARRY M. WILLIAMS, for defendant in error.

*En Banc.*

MR. CHIEF JUSTICE McWILLIAMS delivered the opinion of the Court.

CHARLES L. TEMPLE, the Manager of Revenue for the City and County of Denver, after hearing affirmed (but with a slight modification) a use tax assessment in the amount of $37,654.90 theretofore made by the Sales and Use Tax Division of the Department of Revenue against the Arthur Venneri Company. This assessment was levied in connection with purchases by Arthur Venneri Company from out-of-state suppliers of certain supplies and material which it, as the general contractor, then incorporated into the construction of the United States Courthouse and the Federal Office Building in Denver, Colorado. Mr. Temple will hereinafter be referred to as the Manager, and Arthur Venneri Company, whose home

office is in Westfield, New Jersey, will be referred to as simply Venneri.

Being dissatisfied with this administrative ruling Venneri thereafter brought an action under C.R.C.P. 106(a)(4) wherein it sought to have the aforesaid assessment vacated. As grounds therefor Venneri alleged: (1) that the Manager had exceeded his jurisdiction "inasmuch as said use tax is unconstitutional in respect to its application to the plaintiff" and (2) that the Manager in affirming the assessment abused his discretion in that he acted arbitrarily, capriciously and contrary to the evidence before him.

The trial court upon review of the decision of the Manager held that the Manager in affirming the use tax assessment had "exceeded his jurisdiction and abused his discretion" and generally found in favor of Venneri and against the Manager. By this writ of error the Manager now seeks reversal of the judgment thus entered.

█ Venneri and the General Services Administration of the United States (hereinafter referred to as GSA) entered into a lump sum contract whereby Venneri agreed to construct the United States Court House and the Federal Office Building in Denver. The central issue for our determination is the nature of the relationship thus created between Venneri and GSA. In other words, it is agreed by counsel that if the relationship be truly one of agency, as is contended by Venneri, then Venneri is immune from the use tax assessment by virtue of that portion of Article VI of section 2 of the United States Constitution commonly known as the "supremacy clause."

The Manager claims, however, that the relationship between Venneri and the GSA is not one of agency — but that of an independent contractor — and that the imposition by the City and County of Denver of the use tax on an independent contractor, even though he be under contract to the United States, is therefore not barred by the aforementioned supremacy clause of the United States Constitution. In this particular regard the

trial court found that the contract between Venneri and GSA was "merely an umbrella under which changes and alternations could be made as construction progressed" and that there was such a "very close knit relationship" between Venneri and GSA that Venneri was but "an agent for the United States."

It is the basic position of the Manager that the trial court committed error when it determined, apparently as a matter of law, that Venneri as a lump sum federal contractor was an agent for, and the alter ego of, the United States and that his (the Manager's) determination that the assessment was a lawful one was fully supported by the record made at the hearing held by him. Furthermore, the Manager contends that the assessment in nowise offends the supremacy clause of the United States Constitution; and, in support of this particular contention he relies on *United States v. Boyd,* 378 U.S. 39, 84 S. Ct. 1518, 12 L.Ed.2d 713.

Elaborating a bit on the position of the Manager, he stresses the provisions in the contract between GSA and Venneri which provide, in effect, that Venneri was to include in its contract bid all federal, state and local taxes applicable to the contract. This contractual provision, coupled with what is said to be the plain interpretation placed upon the contract by the parties themselves as evidenced by certain correspondence relating to the effect of our declaration that the Metropolitan Capital Improvement District sales and use tax was unconstitutional, is clear indication, argues the Manager, that Venneri was acting as an independent contractor and not as an agent for the United States.

Venneri, on the other hand, contends that the determination as to whether it was acting in the role of an agent or independent contractor depends upon the nature and degree of the control exercised by GSA over it. In this regard Venneri argues that a consideration of all the terms and provisions of the contract between it and

the GSA leads inescapably to the conclusion reached by the trial court, namely that Venneri was but an agent of the United States. The trial court in its determination of the matter relied upon *United States v. Livingston,* 179 F. Supp. 9, *aff'd,* 364 U.S. 281, 80 S.Ct. 1611, 4 L.Ed.2d 1719.

Initially there is some dispute as to the scope and extent of the judicial review of an administrative decision of the type here under consideration. In our view, however, it really makes little difference whether the issue concerning the nature of the relationship between Venneri and the GSA be viewed as an issue of fact or law, or as a mixed question of fact and law, the result in any event being the same. In other words, if it be an issue of fact, then the Manager's finding was, under the circumstances, binding on the trial court. But if it be deemed an issue of law, then under the authority of *United States v. Boyd, supra,* the trial court erred in holding that the tax assessment was unconstitutional in its application to Venneri.

In the *Boyd* case two private companies, namely Union Carbide Corp. and H. K. Ferguson Co. each of which was under contract with the Atomic Energy Commission, were held to be subject to a Tennessee use tax. In considering the nature of the relationship between the Atomic Energy Commission and the two companies there involved, the United States Supreme Court declared as follows:

"In Muskegon, supra, the Court remarked that '[t]he case might well be different if the Government had reserved such control over the activities and financial gain of Continental that it could properly be called a "servant" of the United States in agency terms.' The Government urges that this is such a case. According to the Government, this case [Boyd] should be viewed as though the [Atomic Energy] Commission was doing its own work through its own employees, the legal incidence of the tax therefore falling on it. But as in Muskegon, we cannot believe that either Carbide or Ferguson

was so assimilated by the Government as to become one of its constitutent parts."

\* \* \* \*

"Of course there are governmental directives and instructions which must be obeyed, for the Commission decides the uses of and needs for fissionable material; and, of course, in the sensitive area of atomic energy operations the Commission's controls are subject to modification and change in the light of technical and other developments. But Carbide and Ferguson brought to the Oak Ridge operation both skill and judgment the United States needed and did not have and there is substantial room for the exercise of both, within and without the broad directives issued by the Commission. Should the Commission intend to build or operate the plant with its own servants and employees, it is well aware that it may do so, and familiar with the ways of doing it. It chose not to do so here. We cannot conclude that Carbide and Ferguson, both cost-plus contractors for profit, had been so incorporated into the government structure as to become instrumentalities of the United States and thus enjoy government immunity."

██ We hold that the record before us when viewed in the light of *Boyd* precludes as a matter of law the conclusion that GSA was in legal effect constructing the United States Courthouse and the Federal Office Building with its own agents or employees. Similarly, as in the *Boyd* case, even though there be "governmental directives and instructions which must be obeyed" we still cannot believe that Venneri was so "assimilated" by the United States Government as to become one of its "constituent parts" and thus enjoy governmental immunity.

As indicated, Venneri relies heavily on *United States v. Livingston, supra,* as did the trial court. We would distinguish *Livingston* on the same basis as did the United States Supreme Court in *Boyd.*

■ Venneri also contends that it is exempt from payment of the tax by virtue of certain exemptions in the taxing ordinance itself. The taxing ordinance under consideration does exempt sales to the United States Government and those sales and uses which Denver by virtue of any constitutional provision is prohibited from taxing. We hold that the exemptions above referred to do not embrace Venneri, which as we have already determined is neither a branch, agency or alter ego of the United States Government, but merely an independent contractor under contract with the United States Government. Hence, the sale to Venneri was not a sale to the United States Government and, as above indicated, the imposition of the use tax on Venneri is not prohibited by any constitutional provision.

The judgment is reversed and the cause remanded with direction that the trial court enter judgment approving the decision of the Manager.