570 P.2d 15 (1977)
CITY OF PUEBLO, Colorado, Plaintiff-Appellee,
v.
Hugh H. C. WEED, Executive Director of Revenue, State of Colorado, Defendant-Appellant.
No. 76-757.
Colorado Court of Appeals, Div. II.
June 9, 1977.
Rehearing Denied July 7, 1977.
Certiorari Granted October 11, 1977.
*16 Jagger & Macrorie, Thomas E. Jagger, Pueblo, Welborn, Dufford, Cook & Brown, Thomas G. Brown, Denver, for plaintiff-appellee.
J. D. MacFarlane, Atty. Gen., Jean E. Dubofsky, Deputy Atty. Gen., Edward G. Donovan, Sol. Gen., Mary J. Mullarkey, Asst. Atty. Gen., Denver, for defendant-appellant.
ENOCH, Judge.
The Executive Director of the Department of Revenue appeals a judgment after a de novo trial pursuant to § 39-21-105, C.R.S.1973, in which the district court reversed the Director's denial of a refund of certain sales and use taxes to the City of Pueblo. We affirm.
Pursuant to the County and Municipality Development Revenue Bond Act, § 29-3-101 et seq., C.R.S.1973 (formerly 1967 Perm. Supp., C.R.S.1963, 36-24-1, et seq.) the City of Pueblo adopted an ordinance in January 1972, authorizing the issuance of revenue *17 bonds to finance pollution control facilities for coke ovens of the CF&I Steel Corporation. To implement this financing, CF&I executed a ground lease of the coke ovens to the city, and the city executed a lease-back of the coke ovens and pollution control equipment, the term of the lease coinciding with the maturity of the bonds. Interest and funds for retirement of the bonds were to be paid solely from the rent received from CF&I, which also agreed to pay all taxes arising in connection with the project.
The contractor for the project paid $85,025 in sales and use taxes for material used on the project. Pueblo reimbursed the contractor for this amount, and then sought reimbursement from the Department of Revenue pursuant to § 39-26-114(2)(c), C.R. S.1973, but the Director denied the claim on the grounds, inter alia, that: (1) Pueblo was not acting in its governmental capacity in financing the project, (2) § 29-3-120, C.R.S. 1973, must be construed to require payment of the amount of sales tax otherwise due, and (3) a refund would violate Colo.Const. Art. XXIV, sec. 5, by amending a law providing revenue for the old age pension fund, so as to reduce the revenue provided for that fund.
The district court found each of these conclusions by the Director to be incorrect, and also rejected the claim that Pueblo had no standing to contest the Director's determination in court.
The Director first claims that because the city is not a "taxpayer" within the meaning of § 39-21-105, C.R.S.1973, Pueblo lacks standing to seek review of the Director's determination. This claim is without merit.
Pueblo was asserting its right to a refund under § 39-26-114(1)(a), C.R.S.1973, because of the exemption therein from sales and use tax for sales made to political subdivisions of the state when acting in their governmental capacities. Section 39-26-114(2)(c), provides that:
A refund shall be made . . . to any person entitled to an exemption where such person establishes: That a tax was paid by another on a purchase made on behalf of such person; . . . and that the person entitled to the exemption paid or reimbursed the purchaser for such tax.
Section 39-26-114(2)(d), C.R.S.1973, then sets forth the procedure for applying for the refund, and further provides:
Aggrieved applicants . . . may appeal to the district courts in the manner provided in § 39-21-105.
A municipality, as a political subdivision of the state, is clearly an "aggrieved applicant" under § 39-26-114(2)(d), C.R.S.1973, when denied a sales and use tax refund, and Pueblo therefore had standing to seek review in the district court.
The Director next argues that under Temple v. Arthur Venneri Co., 172 Colo. 105, 470 P.2d 576, the sales in issue here were not exempt since they were made to the contractor rather than to the city directly. In Temple, a contractor attempted to claim the sales and use tax exemption afforded the United States for materials purchased by the contractor for the federal courthouse. However, that case did not deal with the right of the United States to claim a refund if it had reimbursed the contractor for sales and use taxes paid. Section 39-26-114(2)(c), C.R.S.1973, allows a refund to an exempt entity which establishes that it reimbursed any person who made purchases on its behalf, and the Department of Revenue's own regulation, Regulation 138-5-2(7) (1970) (the "Contractor's Rule"), provides that "The tax immunity accorded to . . . a municipality. . . shall be effected by means of a refund to such tax exempt entity of the tax paid by the contractor . . . ."
Consequently, the fact that a contractor purchases on behalf of a municipality does not defeat the right of a municipality to assert the exemption and right to a refund that it would otherwise have if it made the purchase directly.
The Director also contends that § 29-3-120(1), C.R.S.1973, requires a municipality to pay an amount equivalent to the sales tax a private company engaging in the same project would pay, regardless of any *18 immunity it otherwise would have. We disagree.
Section 29-3-120(1), C.R.S.1974, states: Pursuant to section 4 of article X of the state constitution, all property owned by a county or municipality pursuant to this article shall be and remain exempt from taxation. Nevertheless, any county or municipality acquiring or extending any project as provided in this article shall annually pay, solely out of the revenues from the project and not from any other source, to the state of Colorado. . . a sum equal to the amount of tax which the taxing entity would annually receive if the property were owned by any private person or corporation, any other statute to the contrary notwithstanding.
This statute has no application to this case. Its reference to Colo.Const. Art. X, sec. 4, which prohibits taxation of real or personal property owned by municipalities, and its use of the phrase "a sum equal to the amount of tax which the taxing entity would receive if the property were owned by any private person," (emphasis supplied) clearly reveals that this section is intended to apply only to taxes on property. The sales and use tax "is an excise tax and not a tax on property, real or personal." People v. Denver, 84 Colo. 576, 272 P. 629. Therefore, only ad valorem property taxes are subject to this provision. See also Allardice v. Adams County, 173 Colo. 133, 476 P.2d 982.
The real question here is whether the governmental exemption of § 39-26-114, C.R.S.1973, is available to a municipality for projects undertaken pursuant to the Revenue Bond Act, § 29-3-101, et seq., C.R.S.1973. We hold that whenever a municipality undertakes a project pursuant to the Revenue Bond Act, it is acting within its "governmental capacities" within the meaning of § 39-26-114(1)(a), C.R.S.1973.
Municipal corporations act in two distinct capacities: (1) Governmental, legislative, or public; and (2) proprietary, commercial or quasi-private. Denver v. Mountain States Telephone & Telegraph Co., 67 Colo. 225, 184 P. 604, error dismissed, 251 U.S. 545, 40 S.Ct. 219, 64 L.Ed. 407. The governmental functions of a municipal corporation are those functions exercised as an arm of the state, and for the public good generally, whereas proprietary functions are those exercised for the peculiar benefit and advantage of the citizens of the municipality. Hunke v. Foote, 84 Idaho 391, 373 P.2d 322; Krantz v. Hutchinson, 165 Kan. 449, 196 P.2d 227, 5 A.L.R.2d 47.
The legislative intent of the Revenue Bond Act, as it stood at the time of this project, was set out in detail in 1967 Perm. Supp., C.R.S.1963, 36-24-3:
It is the intent of the general assembly. . . to authorize counties and municipalities to acquire, own, lease, improve, and dispose of properties to the end that such counties and municipalities may be able to promote industry and develop trade by inducing manufacturing, industrial, and commercial enterprises to locate in or remain in this state, in order to assist in relieving the serious threat of extensive unemployment in parts of this state, in securing and maintaining a balanced and stable economy in all parts of this state, and in furthering the use of its agricultural products and natural resources. It is, therefore, the intention of the general assembly to vest such counties and municipalities with all powers that may be necessary to enable them to accomplish such purposes, which powers shall in all respects be exercised for the benefit of the inhabitants of this state for the promotion of their safety, welfare, convenience, and prosperity. It is not intended by this article that any county or municipality shall itself be authorized to operate any such manufacturing, industrial, or commercial enterprise. This chapter shall be liberally construed in conformity with this declaration of purpose.[1] (emphasis supplied)
*19 The emphasized portions of this legislative declaration unequivocally show that the intent of the Act is to promote the general welfare of the inhabitants of the entire state. Indeed, the Act specifically requires that the powers under the Act "shall in all respects be exercised for the benefit of the inhabitants of the state for the promotion of their safety, welfare, convenience, and prosperity."
The case of Allardice v. Adams County, supra, which upheld the constitutionality of the Revenue Bond Act, expressly recognized that the intent expressed in this section represented a valid public purpose. And, a "public" purpose is to be equated with a "governmental," as opposed to a "proprietary" purpose. See Denver v. Mountain States Telephone & Telegraph Co., supra. Therefore, Pueblo was acting in its governmental capacity in financing the project.
Contrary to the Director's position, the fact that the project was originally undertaken between CF&I and the contractor before Pueblo passed the bond ordinance and entered into the lease agreements with CF&I does not defeat the exemption. All right, title, and interest in the property and the contractual rights of CF&I were assigned to Pueblo and the reimbursement for taxes was made to the contractor directly from funds granted by sale of the bonds. Pueblo was the owner of the project by the time it was completed, and the purchases were therefore made on the city's behalf. Consequently, the refund was available to the city pursuant to § 39-26-114(2)(c), C.R.S.1973.
The Director also contends that interpreting the Revenue Bond Act to allow a refund would, as applied here, violate Colo. Const. Art. XXIV, sec. 5, which requires in part that "no law providing revenue for the old age pension fund shall be repealed, nor shall any such law be amended so as to reduce the revenue provided for such old age pension fund [unless substitute sources of revenue are then provided for]." Section 39-26-123, C.R.S.1973, provides that 85% of all net sales tax receipts must be allocated to the pension fund.
However, rather than being a new exemption created after adoption of Colo. Const. Art. XXIV, sec. 5, the exemption for sales taxes under the Revenue bond Act is merely a continuation of the exemption for municipalities that existed at the time that constitutional provision was adopted. See C.R.S.1953, 38-6-14(1). The Revenue Bond Act merely delegates to counties and municipalities certain governmental powers of the state, which were at all times exempt from taxation by what is now § 39-26-114, C.R.S.1973. Therefore, our construction of the statute does not affect its constitutionality.
Judgment affirmed.
SMITH and STERNBERG, JJ., concur.
NOTES
[1] This declaration has been subsequently amended to broaden and further define the powers of counties and municipalities under the Act, but the purposes stated here have been retained, see § 29-3-103, C.R.S.1973 and (1976 Cum.Supp.).