No. 44,287

Charlie L. Parker, *Appellant*, v. The City of Hutchinson, *Appellee*.

(410 P. 2d 347)

Opinion filed January 22, 1966.

*Don Wyman*, of Hutchinson, argued the cause, and was on the brief for the appellant.

*Robert J. Gilliland*, of Hutchinson, argued the cause, and was on the brief for the appellee.

The opinion of the court was delivered by

O'Connor, J.: The question presented by this appeal is whether or not a municipality is immune from liability for the alleged tortious acts of its agents in the operation of the city jail.

The case is before this court as a result of the trial court's sustaining a motion to dismiss filed by the defendant, City of Hutchinson (appellee), to the amended petition of the plaintiff, Charlie L. Parker (appellant), for the reason the same does not state a claim upon which relief can be granted (K. S. A. 60-212 [*b*]). As applied in this case, the motion to dismiss may be treated as the modern equivalent of a demurrer. (*United Transport Service Employees ex rel. Washington v. National Mediation Board*, 85 U. S. App. D. C. 352, 179 F. 2d 446.) The question presented must therefore be decided from the well-pleaded facts of plaintiff's petition.

Highly summarized, the facts disclosed by the amended petition are that plaintiff was confined in the Hutchinson city jail on July 31, 1964, where he was assaulted and injured by another prisoner, Mike Smith. Plaintiff alleges the agents of the defendant city who

were in charge of the jail were "grossly and wantonly" negligent in confining him with Smith because they knew of Smith's violent nature and mental instability, and further, the defendant's agents failed to seek medical attention for the plaintiff for a period of one day after he was injured.

The trial court, in sustaining the defendant's motion to dismiss, filed a memorandum opinion in which it held that the city was immune from tort liability under the facts as pleaded in the amended petition. It appears from the memorandum that the court also called attention to other deficiencies in the plaintiff's amended petition, as well as procedural matters, which are extraneous to the main issue presented for our consideration on this appeal, and, therefore, will be disregarded.

Both parties concede the city was engaged in a *governmental* function in operating its jail, and under the present decisions of this court, the city is immune from any liabiity under the facts alleged in the amended petition.

The early case of *La Clef v. City of Concordia*, 41 Kan. 323, 21 Pac. 272, involved the claim of a prisoner in the city jail who alleged personal injury as a result of subzero temperatures in the jail. In upholding the trial court's sustaining the city's demurrer to the plaintiff's petition, this court said:

"This seems to be the current of authority everywhere, that a city while acting as a political part of the state in suppressing crime and immorality, in the preservation of peace and good order, is not liable for its acts, although negligently committed by the city or its agents. . . ." (p. 325.)

Similarly, in *Pfefferle v. Comm'rs of Lyon Co.*, 39 Kan. 432, 18 Pac. 506, an action brought by an inmate who became ill while in jail alleging that the county permitted the jail to become and remain in an unwholesome condition, the court held the county was acting in a governmental function, and thus was not liable, absent a statute.

The *La Clef* case has been cited in numerous, subsequent cases and has never been overruled. Parker makes no suggestion that the decision does not control the present state of our law as applied to the facts in his petition.

It appears the majority of the jurisdictions follow the rule that a municipality is not liable for injury inflicted upon one prisoner by another even though the person in charge negligently confined the assaulted prisoner in a cell with a prisoner whom he knew to be

of violent temperament. The rationale of nearly all of the cases is that a municipality is engaged in the exercise of purely a governmental function. A collection of cases may be found in the annotations in 46 A. L. R. 94, 50 A. L. R. 268, and 61 A. L. R. 569. (Also, see 18 McQuillin, Municipal Corporations, 3rd Ed. Rev., § 53.80e *et seq.*)

Plaintiff contends that the time has come for this court to follow the lead taken by other jurisdictions and abrogate the doctrine of immunity as it applies to the liability of a municipality for acts of its agents in the discharge of its governmental functions just as we abandoned it as it applies to charitable institutions (*Noel v. Menninger Foundation*, 175 Kan. 751, 267 P. 2d 934) and church corporations (*McAtee v. St. Paul's Mission*, 190 Kan. 518, 376 P. 2d 823).

Although in a majority of the Kansas cases the all-important issue for determination was the question of whether or not a municipality at the time of the alleged tort was acting in its "governmental" or "proprietary" function, resort to those cases is helpful in reaching statements of law on the general subject of immunity of municipalities when acting in a governmental capacity. The rule is firmly established in this state that absent a statute expressly imposing liability, a municipality is ordinarily not liable for the negligence or misconduct of its officers or employees when acting in the performance of its governmental functions. (See *Weast v. Budd*, 186 Kan. 249, 349 P. 2d 912; *Wendler v. City of Great Bend*, 181 Kan. 753, 316 P. 2d 265; *Perry v. City of Wichita*, 174 Kan. 264, 255 P. 2d 667; 7A West Kansas Digest, Municipal Corporations, § 745½; and Hatcher's Kansas Digest, Municipal Corporations, § 187.) The rule is premised on the doctrine that the state is not liable except as made so by statute, and that municipalities as agents of the sovereign, when acting in a governmental capacity, are arms of the state and are likewise not liable. However, certain exceptions to the rule, which involve creation and maintenance of nuisances by a city (*Lehmkuhl v. City of Junction City*, 179 Kan. 389, 295 P. 2d 621, 56 A. L. R. 2d 1409; *Jeakins v. City of El Dorado*, 143 Kan. 206, 53 P. 2d 798) and defects in public streets (*Freeburne v. City of Emporia*, 176 Kan. 503, 271 P. 2d 298; *Smith v. Kansas City*, 158 Kan. 213, 146 P. 2d 660), have been recognized.

In *Wendler v. City of Great Bend*, supra, the origin and development of the doctrine of governmental immunity was carefully re-

viewed, and the court, after making the observation that because of the origin of the rule, the trend of judicial decisions is generally to restrict rather than expand the doctrine (citing *Krantz v. City of Hutchinson, et al.,* 165 Kan. 449, 196 P. 2d 227, 5 A. L. R. 2d 47), proceeded to hold that the municipality was operating an airport in its proprietary capacity and thus could not set up the defense of governmental immunity.

Within the past year this court was requested to strike down the cloak of immunity as it applies to counties in *Caywood v. Board of County Commissioners,* 194 Kan. 419, 399 P. 2d 561. After citing numerous cases which uniformly hold that counties are not liable in damages for negligence in the absence of a statute imposing liability, this court reasserted its position taken in its prior decisions and concluded:

". . . Should the legislature see fit to abolish such immunity, it is of course within its power to do so." (p. 423.)

Parker, in urging this court to join other jurisdictions which have abrogated the doctrine of immunity as it applies to municipalities, castigates the doctrine as being "outmoded," "unjust" and "anachronistic." He relies particularly on *Hargrove v. Town of Cocoa Beach* (Fla.), 96 So. 2d 130, 60 A. L. R. 2d 1193, which apparently represents the result of an appellate court's dissatisfaction with the rule of immunity as it had existed in the state of Florida. The case is frequently referred to as constituting the first successful breakthrough in the repudiation of the municipal immunity role. (See Prosser on Torts, [3rd Ed.] § 125 *et seq.*) There a claim for wrongful death was made by Hargrove's widow against the city. She alleged Hargrove died from smoke suffocation after being left unattended by the jailer in the city jail. In holding that a city may be liable for the torts of police officers under the doctrine of respondeat superior, the court said the rule that a municipality is immune from liability for wrongful acts committed in the exercise of its governmental functions was a rule originated by the courts; therefore, is subject to abolition by the courts, and for such purpose, legislation is unnecessary.

A few of the cases from other states cited by the plaintiff which he contends display the trend toward abolition of the doctrine are *Molitor v. Kaneland Com. Unit Dist.,* 18 Ill. 2d 11, 163 N. E. 2d 89, cert. den. 362 U. S. 968, 4 L. Ed. 2d 900, 80 S. Ct. 955, 86 A. L. R. 2d 469; *Muskopf v. Corning Hospital Dist.,* 55 C. 2d 211,

11 Cal. Rptr. 89, 359 P. 2d 457; *Holytz v. Milwaukee,* 17 Wis. 2d 26, 115 N. W. 2d 618; *Stone v. Arizona Highway Commission,* 93 Ariz. 384, 381 P. 2d 107; and *Haney v. City of Lexington* (Ky.), 386 S. W. 2d 738.

It is significant to note that in several of the states where the courts have taken upon themselves the task of abrogating the doctrine, the legislature has promptly acted to temper the judicial fiat. In a definitive study on the subject, Albert B. Martin, in an article entitled "Sovereign-Governmental Immunity," published by The League of Kansas Municipalities, November 1965, makes the following observation:

". . . And it is significant that the courts and the legislatures have somehow seen that the unqualified removal of immunity might lead to the break-up of government. . . . It is further significant that in several of the states where the supreme courts have announced in stentorian tones that the hated, unjust and unfair doctrine of governmental immunity was abrogated (carefully excluding the judiciary and the legislative and sometimes executive judgment, etc.), the legislatures have hastened to undo the damage done by the courts and have restored immunity entirely or stated the areas of immunity and liability, prescribed limitations on recovery, and otherwise restored the stature of government as government, and, knowingly or unknowingly, acknowledged the existence of sovereignty."

For example, we note that in the state of Illinois after the *Molitor* decision, in which the court prospectively, except as to the plaintiff therein, abrogated the immunity doctrine as it applies to school districts, the legislature promptly responded by reinstating immunity with respect to a number of subdivisions of government (9 De Paul L. Rev. 39) and in 1965 enacted a new tort liability act (S. H. A., ch. 85, § 1-101 *et seq.* [Illinois Annotated Statutes]).

The 1961 California legislature was in session when the *Muskopf* decision abolishing tort immunity of a public hospital district was rendered and promptly enacted a moratorium statute on the Muskopf claim and other similar claims effective until the end of the 1963 legislative session. (*Corning Hospital Dist. v. Superior Court,* 57 C. 2d 488, 20 Cal. Rptr. 621, 370 P. 2d 325.) Then in 1963 the legislature enacted comprehensive laws defining liability in certain areas and granting specific immunities in other areas. (See, for example, California Government Code, Title I, Division 3.6, § 810 *et seq.*)

Following the *Holytz* decision, which prospectively, except as to the plaintiff in that case, abrogated the doctrine of governmental

immunity of "all public bodies within the state," the Wisconsin legislature in 1963 enacted chapter 198, which requires notice of injury and provides for limitation of recovery. Certain areas of immunity are specifically declared by the statute. The action of the legislature could well be interpreted as the response to the suggestion of the court in its opinion where it is stated:

"If the legislature deems it better public policy, it is, of course, free to reinstate immunity. The legislature may also impose ceilings on the amount of damages or set up administrative requirements which may be preliminary to the commencement of judicial proceedings for an alleged tort." .

The response of the legislatures in the states referred to above, as well as in other states where the courts have eroded or eliminated the immunity doctrine, leads us to believe that legislative action is preferable if municipal immunity is to be restricted or abolished.

As already indicated, this court has consistently recognized, except for those instances noted in this opinion, that if the doctrine of immunity as it applies to municipalities acting in a governmental function is to be changed, it must be done by the legislature. Apparently this view is shared by most courts, for our research confirms the conclusion of the author of the annotation in 60 A. L. R. 2d 1198 that the rule of municipal immunity continues to be applied by the overwhelming majority of the courts and relief from it must come, if at all, from the legislature. The most recent assault upon the doctrine as it applies to counties occurred in the *Caywood* case where again we deferred action to the legislature.

In spite of our steady stream of decisions, our legislature has not sat idly by and refused to act in the area of governmental immunity when it deemed the public policy of the state required a legislative pronouncement on the subject. This is readily demonstrated by K. S. A. 12-2601, *et seq.,* which authorizes a municipality to purchase motor vehicle liability insurance, and to the extent of the amount of insurance, the municipality waives its governmental immunity from liability. The enactment of K. S. A. 12-111, which specifically extends a city's immunity for acts of firemen or officers of its fire department sent beyond the city's territorial limits, illustrates legislation that not only impliedly approves our numerous decisions upholding the doctrine but also seeks to insure that immunity is extended to a particular area of activity. Also, see K. S. A. 74-4707, *et seq.,* which requires all state agencies to purchase motor vehicle

liability insurance and governmental immunity is waived to the extent of the insurance carried.

Recently the Iowa supreme court was requested to abrogate the doctrine as it applies to a school district in *Boyer v. Iowa High School Athletic Assn.*, 256 Iowa 337, 127 N. W. 2d 606. The court, in deferring action to the legislature and upholding the doctrine, pointed out that although the doctrine of governmental immunity may have been of ancient judicial origin, it has been recognized as the policy of the state by the limited action taken by the legislature in relaxing the laws governing the purposes for which public funds may be expended and authorizing purchase of liability insurance covering proprietary functions as well as officers and employees of certain public bodies. In the court's opinion, had the legislature favored *complete abrogation* of the immunity rule, as the plaintiff contended for, it could have said so by authorizing purchase of *insurance protecting against such claim as there* asserted; by not so doing, the limited action taken showed more than mere tacit approval of the long-standing doctrine left unchanged.

The reasoning of the Missouri supreme court in *Fette v. City of St. Louis,* 366 S. W. 2d 446, is equally enlightening and apropos to the instant case. There the plaintiff sought to have the doctrine of governmental immunity abrogated insofar as it applies to municipalities as employers. In refusing to strike down the doctrine, the court relied upon its stand taken in *Brown v. City of Craig,* 350 Mo. 836, 168 S. W. 2d 1080, and again in *Gillen v. City of St. Louis,* 345 S. W. 2d 69. In the *Brown* decision the court stated:

"This whole doctrine of governmental immunity has been increasingly criticized. However, such nonliability is based not merely on the ancient view that the king can do no wrong, as frequently suggested; but also upon the principle that public officers have no authority to bind the sovereign (the whole people) except such as is given them by specific constitutional and statutory provisions. . . . While the complexity of modern government may require a relaxation of present rules of absolute nonliability, undoubtedly this is a matter for the Legislature (which must authorize the collection and disbursement of public funds) to provide in the interest of more complete justice to the individual but under strict regulations and with very definite limitations to protect the public interest." (p. 841.)

The Missouri court concluded that the experience of other states, such as California and Illinois, confirmed its view that any change in the doctrine should be accomplished by the legislature and not by the courts.

Inasmuch as legislative recognition has been given in this state to the general subject of governmental immunity, and public policy as determined by the legislature has not demanded the abolition of the doctrine in the area under consideration, this court declines to impose liability by judicial decree.

Since no statute exists imposing liability on a municipality for injury sustained under the factual situation alleged by the plaintiff in his amended petition, the trial court correctly sustained the defendant's motion to dismiss.

The judgment is affirmed.