No. 44,388

CHRISTINA ANN McCOY, *Appellant,* v. THE BOARD OF REGENTS OF THE STATE OF KANSAS; WHITLEY AUSTIN, HENRY A. BUBB, ARTHUR H. CROMB, WILLIAM F. DANNENBARGER, RAY EVANS, CLEMENT H. HALL, DWIGHT D. KLINGER, LAWRENCE D. MORGAN, CLYDE M. REED and MAX BICKFORD, *Appellees.*

(413 P. 2d 73)

Opinion filed April 9, 1966.

*Joseph P. Jenkins,* of Kansas City, argued the cause, and *Joseph Cohen, Charles S. Schnider, John E. Shamberg, Norma Braly, Barton P. Cohen, Jacob F. May, Jr., Frederick K. Cross, Edward G. Collister, Jr.* and *C. W. Lowder,* of Kansas City, were with him on the briefs for appellant.

*Kenton C. Granger,* Assistant Attorney General, argued the cause, and *Robert C. Londerholm,* Attorney General, and *A. K. Stavely,* Assistant Attorney General, were with him on the briefs for appellees.

The opinion of the court was delivered by

KAUL, J.: This is an action to recover damages for personal injuries allegedly sustained by the plaintiff, Christina Ann McCoy (appellant), while a patient in the University of Kansas Medical Center.

The question presented is whether the Board of Regents of the State of Kansas, consisting of the nine individual members named and the secretary of the Board, defendants (appellees), are immune from liability for alleged negligence in the operation of the University of Kansas Medical Center.

It is alleged by plaintiff that the Board of Regents of the State of Kansas under statutory direction is charged with the authority, management, control and government of the University of Kansas and in such capacity operates and manages the University Medical Center. (K. S. A. ch. 76.)

The trial court sustained a motion of defendants to dismiss the action on the ground that the Board of Regents is an agency of the State of Kansas and entitled to claim sovereign immunity as a defense against plaintiff's cause of action.

The plaintiff perfected this appeal and included in her statement of points the following:

"1. The trial court erred in sustaining defendants' motion to dismiss.

"2. The trial court erred in holding that the doctrine of sovereign immunity entitled defendants to a dismissal of this action.

"3. The doctrine of sovereign immunity should be abolished.

"4. University of Kansas Medical Center was at all times relevant in this action engaged in a proprietary function so that the doctrine of sovereign immunity was inapplicable."

The motion to dismiss as presented to the trial court in this case may be considered the modern equivalent to a demurrer. Therefore, the questions presented will be decided from the well pleaded facts of plaintiff's petition. (*Parker v. City of Hutchinson,* 196 Kan. 148, 410 P. 2d 347.)

The petition may be summarized quite briefly for purposes of our consideration here. Plaintiff alleges she entered University of Kansas Medical Center on April 29, 1961, as a private (paying) patient for treatment of multiple injuries suffered by her in an automobile accident. Plaintiff suffered injuries to her spinal cord resulting in a complete paraplegic state below the hips with total sensory loss in both lower extremities. Plaintiff's confinement and treatment continued until she had attained sufficient improvement to warrant being released on November 1, 1961. She states, however, that at that time she was still in a paraplegic state with complete sensory loss in both lower extremities. During the night of October 31, 1961, plaintiff alleges her bed had been placed alongside a hot radiator, and she suffered deep and penetrating burns of her left foot when said foot came into contact with the radiator, and remained in contact for an unknown period of time, all without plaintiff's knowledge due to her sensory loss. She alleges such injury was due to the carelessness and negligence of the agents and employees of the hospital. That by reason thereof, she was compelled to remain in said hospital for further treatment for a period of time which had not been determined as of December 29, 1961. On this last date she was still confined to her bed in a helpless state and was again placed alongside the same hot radiator and that sometime during the night of said date plaintiff again was found by hospital employees with her left foot in contact with said hot radiator.

As a result thereof she suffered deep and severe second and third degree burns on her left foot.

Plaintiff further alleges that the burns sustained by her during the nights of October 31 and December 29, 1961, were caused by the carelessness and negligence of the agents, servants and employees of said hospital who had knowledge of her helpless condition and the fact that she had no feeling in her legs. Plaintiff states that she was under the influence of sleep inducing medication on both occasions.

As a result of the burns plaintiff was compelled to undergo additional hospitalization and treatment from November 1, 1961, to February 13, 1962, and underwent several skin grafting surgical procedures. She alleges unsightly scars resulting from the surgery and the injuries and results of the surgery are permanent. Recovery was sought in the amount of $100,000.00.

The plaintiff presents her contentions in the alternative. She first contends that the doctrine of sovereign immunity as applied to agencies of this state should be abolished *in toto*. If total abolishment is rejected by the court, then in the alternative she argues that the operation of the Medical Center is a proprietory function and that the doctrine of immunity is inapplicable when an agency of the state is engaged in the pursuit of such function.

Defendants, on the other hand, contend this court has specifically resolved both points to the contrary of plaintiff's positions in the recent decisions of *Caywood v. Board of County Commissioners,* 194 Kan. 419, 399 P. 2d 561, and *Parker v. City of Hutchinson,* supra.

At the outset it is to be noted that the issues here involve the application of the doctrine of immunity to the functions of an agency of the state itself. In the *Caywood* and *Parker* decisions our consideration was directed to the application of the doctrine of immunity to the functions of subordinate governments, a county and city respectively. Our discussion here is restricted primarily to the application of the immunity to the functions of an actual agency of the state itself, the Board of Regents.

The status of the Medical Center as a function of the state was not directly in issue but its immunity as such from tort liability was referred to in *Voss v. Bridwell,* 188 Kan. 643, 364 P. 2d 955, and in *Capps v. Valk,* 189 Kan. 287, 369 P. 2d 238, actions brought to recover damages for malpractice against staff physicians of the Medical Center. In the *Capps* case it was stated:

"The district court evidenced great concern about the problem of making interns, residents, and other doctors at the Medical Center, who were paid salaries by the state of Kansas, agents of the defendant who was a professor and instructor at the Center and who was also paid a salary by the state. This is not the problem. *Where the employer is a state governmental agency and immune from tort responsibility under the governmental function doctrine*, the official cloak of immunity does not extend to the negligent employee, as an individual, so as to shield him from answering for his wrongful act by which another has suffered injury. (*Emrie v. Tice*, 174 Kan. 739, 744, 258 P. 2d 332; *Rose v. Board of Education*, 184 Kan. 486, 337 P. 2d 652; *Voss v. Bridwell*, 188 Kan. 643, 657, 364 P. 2d 955.) The defendant was not acting as a professor and instructor when he performed surgery on the plaintiff. His employment was not special and limited to surgery only, but he was acting as a physician in private practice to attend the plaintiff who was his private patient." (pp. 290, 291.) (Emphasis added.)

The immunity from tort liability of the Medical Center was clearly indicated in both the *Bridwell* and *Capps* cases, however, the court refused to include negligent employees within the cloak of immunity. We are now called upon to reexamine the application of the immunity doctrine to this particular function of the state.

We have considered the argument of plaintiff that injustice may be done to a person who has suffered injury at the hands of negligent employees of a state agency by the application of the doctrine. Also, we are aware of the expressions of some text writers and legal scholars that the doctrine is an outmoded relic of the past and has no place in a modern enlightened society. However, it is unnecessary to engage in a discussion of the merits of the doctrine. The decisions of this court on the subject were not resolved by a determination of whether the doctrine was good or bad, but rather on the premise that abrogation is properly a function of the legislature and not the judiciary. In this connection plaintiff argues that it should not be solely the legislature's function and cites a number of cases from other jurisdictions in which the courts have acted. Most of the cases cited by plaintiff were reviewed in our recent opinion in *Parker v. City of Hutchinson*, supra. Repetition here would serve no useful purpose. Legislative reaction in many states to the judicial abrogation or alteration of the doctrine, is also discussed in the *Parker* opinion. We recommend to the interested reader, the extensive survey of the subject by Albert B. Martin, in an article entitled "Sovereign-Governmental Immunity," published by The League of Kansas Municipalities, November 1965.

In writing on the subject, many authors advocating abrogation

of the doctrine, advance the argument that legislatures of the various states are generally indifferent to tort law and changes thereof. This argument is not applicable in this jurisdiction.

The legislative-judicial prerogative proposition in Kansas may be distinguished from that existing in most states where judicial prerogative has been exercised. In Kansas, as we pointed out in the *Parker* case, the legislature has not been indifferent. We must acknowledge the legislature's awareness of the sovereign immunity principle as evidence by legislative action in providing in a number of instances for tort liability of political subdivisions and agencies of the state.

In 1955 immunity from liability for the negligent operation of motor vehicles was waived to the extent of the amount of motor vehicle liability insurance purchased by a political subdivision of the state. (K. S. A. 12-2601, *et seq.*) Some years ago immunity of a county was waived as to liability for a defective bridge, culvert or highway. (K. S. A. 68-301.)

By the enactment of K. S. A. 68-419 the legislature waived the immunity of the state highway commission from suit for defective highways. The waiver of immunity was qualified by the legislature, however, in limiting liability unless certain named officials or employees of the highway commission had notice of the existence of defects five days prior to the time when the alleged damage was sustained.

In 1959 the legislature provided for waiver of immunity from liability of a state agency for injuries to their employees. The waiver of immunity in this case was restricted to those agencies electing to come under the Workmen's Compensation Act and further limited the employees covered to be only those engaged in a "hazardous activity." (K. S. A. 44-505a, *et seq.*)

As recently as 1963 the legislature provided for limited waiver of immunity of state agencies from liability resulting from the negligent operation of motor vehicles. (K. S. A. 74-4747, *et seq.*) The legislature in these enactments provided for the purchase of liability insurance and again the caution exercised by the legislature in waiving immunity is clearly evidenced by the limitation of the waiver only to the extent of the amount of insurance obtained.

The full awareness of the subject by the legislature is demonstrated by these numerous and continuing enactments. In our opinion such legislative activity in the field serves as a sound basis for our previous rulings that the legislature has given extensive

recognition to the subject of governmental immunity in this state and this court should decline a further waiver by judicial decree.

Plaintiff argues that our recent action in abolishing the charitable doctrine in *Noel v. Menninger Foundation,* 175 Kan. 751, 267 P. 2d 934 (1954) and by including therein religious corporations in *Mc-Atee v. St. Paul's Mission,* 190 Kan. 518, 376 P. 2d 823 (1962), we have participated in a so-called revision of common-law tort immunities which should now be extended to governmental functions. Plaintiff's argument that an analogy exists cannot be maintained. In the *Noel* opinion we stated the reasons why the need no longer exists for the application of the immunity doctrine to functions of a charitable institution. Repetition here would serve no useful purpose. Immunity from tort liability as applied to charitable and religious institutions involves the function of voluntary private corporations and individuals, an area in which the legislature has shown no concern.

Plaintiff's contention that the operation of the Medical Center by defendants constitutes a proprietary, as opposed to a governmental, function is irrelevant to the issue under consideration. The governmental-proprietary distinction relating to municipal immunity has never been applied to activities of a state agency in this jurisdiction. The state is the fountainhead of governmental immunity. The immunity of subordinate branches of the government stems from the state. As long as a subordinate branch of the state performs governmental and political functions set up and imposed by the state, then such branch partakes of the immunity which inheres in state sovereignty. (*Smith v. Higgins,* 149 Kan. 477, 87 P. 2d 544.) A city, unlike a county is authorized to voluntarily pursue functions beyond those governmental and political functions imposed upon it as a branch of the state government. Generally when such proprietary functions are pursued by a municipality it moves out from under the cloak of immunity from tort liability stemming from the state. Cases demonstrating the application of the governmental-proprietary function relating to municipal immunity have been thoroughly catalogued in our recent decisions of *Parker v. City of Hutchinson,* supra, and *Caywood v. Board of County Commissioners,* supra. The distinction is inapplicable to the state agency function under consideration herein and further discussion is unnecessary.

Lastly, the plaintiff contends the doctrine of immunity collides with § 18 of the Kansas Bill of Rights. The same argument, with respect to the immunity of a county, was before the court in *Cay-*

*wood v. Board of County Commissioners,* supra. The proposition was rejected. It was stated:

"Notwithstanding plaintiff's argument as to the application of § 18 of the Bill of Rights, which provides that all persons, for injuries suffered in person, shall have remedy by due course of law, we decide this case—not on the basis of the 'governmental-proprietary' function doctrine as applied to cities—but on the basis of the many decisions of this court to the effect that in the absence of a statute imposing liability—a county is not liable in damages for negligence." (p. 423.)

The legislature has expressed the policy of this state concerning the extent of liability of state agencies for suit. Since no liability has been imposed as to the functions of defendants in the operation of the Medical Center, we must conclude the trial court correctly sustained the defendants' motion to dismiss.

The judgment is affirmed.