No. 45,258

BENJAMIN F. GARDNER, ANNA WEBSTER, LELA GUYTON and DELLA LEWIS, *Appellants*, v. JOSEPH H. McDOWELL, MAYOR; THE CITY OF KANSAS CITY, KANSAS; LLOYD ROGERS and LAWRENCE STAHL, *Appellees*.

(451 P. 2d 501)

Opinion filed March 8, 1969.

*John Fields*, of Kansas City, argued the cause and *David W. Carson, John K. Dear, Ernest N. Yarnevich, J. W. Mahoney* and *Joseph T. Carey*, of Kansas City, and *John Anderson, Jr.*, of Olathe, were with him on the brief for appellants.

*Edward H. Powers, II*, of Kansas City, argued the cause and was on the brief for the appellees Lloyd Rogers and Lawrence Stahl.

*C. W. Brenneisen, Jr.*, of Kansas City, was on the brief for the appellee City of Kansas City, Kansas.

A. B. *Howard,* of Kansas City, was on the brief for the appellee Joseph H. McDowell.

The opinion of the court was delivered by

FROMME, J.: The heirs at law of Olive I. Allen filed this action against the City of Kansas City, Kansas, Mayor Joseph H. McDowell and two police officers to recover damages for wrongful death. Olive I. Allen was shot and killed by the two officers in an attempt to apprehend her at 4:30 a. m. on March 29, 1967. The plaintiffs appeal from an order dismissing the action.

The petition was filed June 30, 1967. On July 18 the defendants filed both an answer and a motion. The motion was captioned "Motion for Summary Judgment." The defendants moved the court to enter judgment for defendants on the ground the pleadings showed that they were entitled to judgment as a matter of law. On August 11 this motion was heard. No discovery proceedings had been attempted by any of the parties and no affidavits were filed. The court sustained the motion as to all defendants.

The provisions of our code relating to motions for summary judgment permit a defendant to file such a motion at any time after a claim is filed against him. (K. S. A. 60-256 (*b*).) However, such a motion contemplates consideration of all pleadings filed. Matters outside the pleadings may also be considered when established by affidavits, depositions, answers to interrogatories and requests for admissions. (K. S. A. 60-256 (*c*).) The parties did not present any matters to the court except the pleadings. Strictly speaking, the motion was not one for summary judgment. It was directed against the allegations of the petition. The motion appears to be a motion to dismiss under K. S. A. 1968 Supp. 60-212 (*b*) (6) and as such must be determined from the allegations of the petition. The motion in such case may be treated as the modern equivalent of a demurrer. (*Parker v. City of Hutchinson,* 196 Kan. 148, 410 P. 2d 347.) Questions of fact presented in the answer cannot be resolved on such a motion and we limit our discussion to the petition which reads:

"Come now the plaintiffs and for this their cause of action against the defendants, allege and state:

"1. That the plaintiffs, Anna Webster, Lela Guyton and Della Lewis are citizens and residents of the State of Kansas; that the plaintiff Benjamin F. Gardner, is a citizen and resident of the State of Nebraska.

"2. That plaintiffs are the heirs at law of Olive I. Allen, deceased, and

that as such they have sustained a loss by reason of her death, as hereinafter more fully appears.

"3. That the defendant, Joseph H. McDowell, was at all times mentioned herein, the Mayor of the City of Kansas City, Kansas, and a citizen and resident of the State of Kansas. That the City of Kansas City, Kansas is a municipal corporation within the State of Kansas, having the power to determine its local affairs and government under the Home Rule Amendment to the Constitution of the State of Kansas; upon which the plaintiffs caused a Notice and Claim to be served on the 29th day of May, 1967, a copy of which is attached hereto as Exhibit 'A' and made a part hereof as though fully set forth herein; that the defendants, Lloyd Rogers and Lawrence Stahl were at all times mentioned herein, citizens and residents of the State of Kansas, employed as Police Officers by the defendant, City.

"4. That on March 29, 1967, the decedent, Olive I. Allen was an elderly woman, some 70 years of age who was physically decrepit, and mentally confused.

"5. That prior to March 29, 1967, the defendant, McDowell personally assumed the active control and management of the Police Department of the defendant, City. That in so doing, he failed, refused and neglected to follow the advice of his Chief of Police even though said defendant McDowell had no experience whatever as a Police Officer or as an administrator or Chief of Police in charge of a Police Department.

"6. That at approximately 4:30 a. m. the morning of March 29, 1967, the defendant McDowell, under the conditions and circumstances herein alleged, sent the defendants Rogers and Stahl, two young Police Officers, wholly and totally untrained and inexperienced in dealing with individuals such as the decedent, Olive I. Allen, to apprehend her on the street in front of 630 Garfield Avenue, Kansas City, Kansas. That in so doing, the defendants Rogers and Stahl, carelessly, negligently, willfully and wantonly opened fire upon the person of Olive I. Allen with their high-powered Magnum revolvers at point blank range, to-wit: less than five feet; that said defendants' willful and unlawful use of unnecessary force consisted of firing into Olive I. Allen's body until it had been pierced through and through, at least eleven (11) times by the shattering impact of their high-velocity revolvers.

"7. From this furious fusillade, Olive I. Allen, mortally wounded, staggered several feet, fell and died on the sidewalk.

"8. That the acts herein described, with the results obtained, were committed by the defendants under color of the Ordinances of the City of Kansas City, Kansas and the laws of the State of Kansas; that they were unlawful and deprived the decedent, Olive I. Allen of her life and the plaintiffs of the society, companionship, comfort, protection, advice, and counsel of said decedent.

"9. That the defendant McDowell was careless, negligent and remiss in his duties as aforesaid in sending two young, untrained and inexperienced policemen, to-wit: the defendant Rogers and the defendant, Stahl to bring in the elderly Olive I. Allen; that in by-passing his chain of command in the Police Department and ignoring the experience and capabilities of the officers in charge of the Police Department, he made himself personally liable for all

actions, carelessly or wrongfully done during the course of his direction, management and command of said Department. That had the said McDowell been operating the Police Department in accordance with established police procedures, he would have known that the said Olive I. Allen had been in a confused mental state for several days, and had been picked up by other members of the Police Department on the streets and the thoroughfares of the City of Kansas City, Kansas; that her mentally confused condition was readily apparent and she should have been taken to a home or committed to an institution for her own well being.

"10. That as a direct and proximate result of the careless, negligent, wrongful and unlawful acts herein alleged, the said Olive I. Allen met her death and the plaintiffs have lost the society, companionship, comfort, protection, advice, and counsel of the said Olive I. Allen: That the plaintiffs have sustained mental anguish, suffering and bereavement and incurred reasonable funeral expenses in the amount of Nine Hundred Eighty Four and 50/100 ($984.50) Dollars, all in and to their actual damages in the sum of Twenty-Five Thousand ($25,000.00) Dollars and the costs of this action.

"WHEREFORE, plaintiffs pray judgment against the defendants and each of them, in the sum of Twenty-Five Thousand ($25,000.00) Dollars and the costs of this action."

It is apparent from the petition that the acts which form the basis for claims arose from the operation of the city police department. The operation of a police department by a city is a governmental function. Under the decisions of this court the city is immune from liability for the acts of its police officers. One of our recent cases so holding is *Parker v. City of Hutchinson*, supra. Similar decisions have been handed down by federal courts. (See *Cuiksa v. City of Mansfield*, 250 F. 2d 700, cert. den. 356 U. S. 937, 2 L. Ed. 2d 813, 78 S. Ct. 779.)

The plaintiffs urge that it is time for this court to abrogate the doctrine of immunity as applied to liability of a city for the acts of its officers and agents. A similar contention was urged upon this court and rejected in *Parker v. City of Hutchinson*, supra, where we said:

"The response of the legislatures in the states referred to above, as well as in other states where the courts have eroded or eliminated the immunity doctrine, leads us to believe that legislative action is preferable if municipal immunity is to be restricted or abolished." (p. 153)

In further support of their contention plaintiffs say the Home Rule Amendment (Constitution of the State of Kansas, Art. 12, § 5.) furnishes a sound basis for abolition of the doctrine as applied to cities. This amendment empowers cities to exercise some measure of self determination in local governmental affairs. However, gen-

eral laws affecting cities remain subject to state legislation. We find nothing in the amendment, and plaintiffs cite no provision therein, which bears upon the subject of governmental immunity. The amendment specifically retains all general laws of statewide concern which are made uniformly applicable to all cities. Authority is reposed in the legislature to enact all laws of this nature. Cities remain subordinate branches of government and they will continue to perform governmental and political functions as agents of the sovereign state. It is the performance of these functions which is the basis for the grant of governmental immunity.

In *McCoy v. Board of Regents,* 196 Kan. 506, 413 P. 2d 73, it was said:

". . . The state is the fountainhead of governmental immunity. The immunity of subordinate branches of the goverment stems from the state. As long as a subordinate branch of the state performs governmental and political functions set up and imposed by the state, then such branch partakes of the immunity which inheres in state sovereignty. (*Smith v. Higgins,* 149 Kan. 477, 87 P. 2d 544.) . . ." (p. 511)

The Home Rule Amendment does not change the doctrine of governmental immunity of cities as found in the case law of Kansas.

The acts set forth in plaintiff's petition occurred while the city was engaged in the performance of a governmental function. Governmental immunity applies to the city in such case and the petition fails to state a claim against the city upon which relief may be granted.

This does not determine the question raised by the motion as to the remaining defendants. Personal liability exists against police officers who needlessly and wantonly injure a person while making an arrest. (See 60 A. L. R. 2d Anno. 873 §§ 3, 4.)

As early as 1885 in *Peters v. City of Lindsborg,* 40 Kan. 654, 20 Pac. 490, it was held a petition stated a cause of action against Ole Admundson, city marshal of Lindsborg, for acts committed in his official capacity in arresting a person on the streets of that city. It was further held a demurrer to the petition was properly sustained as to the city, the mayor and the councilmen. The city was dismissed from the action by reason of governmental immunity. The mayor and others were dismissed because the petition failed to allege they were personally present when the acts were committed or that they directed or participated in them.

In *City of Topeka v. Boutwell,* 53 Kan. 20, 35 Pac. 819, it was said:

"It is claimed by the plaintiff that, in making the arrest, in taking him to prison, and while in confinement, he was beaten and treated with harshness and cruelty. The policeman who made the arrest had the right to use such force as was reasonably necessary under the circumstances to overcome the plaintiff's resistance; and where resistance is made with deadly weapons, like a hatchet or hammer, the officer would not be held to that degree of nice and scrupluous care in effecting the arrest that would be required in ordinary cases; but, having overcome such resistance, and having the prisoner fully in his power, the officer is then liable for an unnecessary harm or indignity done to the prisoner. . . ." (p. 32.)

Other instances of unnecessary and excessive use of force by police officers may be found in our cases. (See *Pfannenstiel v. Doerfler,* 152 Kan. 479, 105 P. 2d 886, and *Bukaty v. Berglund,* 179 Kan. 259, 294 P. 2d 228.)

In *Wommack v. Lesh,* 180 Kan. 548, 305 P. 2d 854, this court said:

"There can be no doubt but that the maintenance and operation of a police department by a municipality is a governmental function as distinguished from proprietary, thus clothing the municipality with immunity for acts of negligence or misfeasance of its employees engaged in the carrying out of such function. It is also a general rule that with respect to governmental functions a municipal officer performing duties strictly public is not liable for negligent acts of misfeasance of persons employed by the municipality who are under his general direction and authority, the rule being based on the ground that the doctrine of *respondeat superior* does not apply under such circumstances. (37 Am. Jur., Municipal Corporations, § 265, p. 888.) Entirely aside from the fact the petition is utterly devoid of facts connecting the chief of police, the city manager, the mayor and city commissioners with the incident in question, no authority has been cited, and we know of none, which would, under the allegations of this petition, impose liability on those officials for the action of the arresting police officer. (Citing cases.) . . ." (p. 550.)

A mayor or chief of police in charge of a police department cannot be held liable for the acts of the arresting officers under the doctrine of *respondeat superior.* In order for liability to attach they must personally direct or participate in the unnecessary and wrongful acts which result in injury or death. The federal law contains similar holdings (See *Jordan v. Kelly* (W. D. Mo. 1963), 223 F. Supp. 731.)

We have examined the facts alleged in the petition. From these allegations it appears Mayor Joseph McDowell assumed control of the police department in Kansas City without having experience as a police administrator. He *sent* two young inexperienced officers to apprehend Olive I. Allen. These officers willfully and wantonly shot the decedent and her death is alleged to have been caused by the unnecessary and unlawful use of force by the officers.

Under K. S. A. 13-1808 the mayor is *ex officio* commmissioner of the city police department. The department is placed under his charge and supervision. Assuming, however unlikely it may appear, that Mayor McDowell personally dispatched the officers to the scene at 4:30 in the morning, these acts were within his statutory authority as police commissioner. Such action would not impose personal liability upon him for the unlawful and wanton acts of the police officers. It is not alleged he directed or participated in the acts resulting in the death. Therefore, the petition fails to state a claim against Mayor McDowell upon which relief may be granted.

Quite a different situation appears with regard to Lloyd Rogers and Lawrence Stahl. They are charged with having been personally present and having fired the shots. It is alleged they used unlawful and unnecessary force to apprehend the decedent in that they carelessly, negligently, willfully and wantonly shot the decedent at point blank range of less than five feet.

Under the posture of the case as it comes to us we are not at liberty to consider facts alleged by the officers in the answer. Suffice it to say the allegations of their answer present a somewhat different account of the shooting than is set forth in the petition.

Under the authorities previously cited the petition stated a claim against officers Stahl and Rogers upon which relief might be granted.

The order of the trial court dismissing the claim against Mayor Joseph H. McDowell and against the City of Kansas City, Kansas, is affirmed. The order dismissing the claim against Lloyd Rogers and Lawrence Stahl is reversed and the case is remanded for further proceedings.