THE CITY OF OSAWATOMIE V. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF MIAMI et al.

No. 15,450. (96 Pac. 670.)

SYLLABUS BY THE COURT.

1. LIMITATION OF ACTIONS—*Municipal Corporations.* The rule that statutes of limitation do not apply to actions by the state unless a legislative intention that they shall do so is shown by express language or appears by the clearest implication also applies to subordinate political bodies, including municipal corporations, with respect to any litigation to enforce governmental rights.

2. —— *Recovery of Taxes Paid by a City and Diverted by a County.* Where a county diverts to its own treasury a part of the money it has collected upon taxes levied by a city no statute of limitation runs against an action by the city to recover the amount so wrongfully withheld.

Error from Miami district court; WINFIELD H. SHELDON, judge. Opinion filed June 6, 1908. Reversed.

*B. T. Riley,* and *H. S. Maynard,* for plaintiff in error.

*Thomas H. Kingsley,* and *Frank M. Sheridan,* for defendant in error.

The opinion of the court was delivered by

MASON, J.: The city of Osawatomie brought an action against Miami county alleging in substance that for a period of some fifteen years the county had re-

tained for its own benefit a part of the money collected upon taxes levied by the city, especially with respect to the portion paid as interest by delinquents. The petition asked an accounting and a judgment for the amount found due. The county filed a motion to require the plaintiff to state separately its causes of action, upon the theory that an independent right of recovery accrued upon the failure to pay the amount due at each quarterly distribution. This motion was sustained, and an amended petition was filed containing twenty-eight distinct counts. A demurrer was sustained as to all of them based upon transactions that took place more than three years before the commencement of the action, upon the ground that the statute of limitation had barred a recovery thereon. The plaintiff prosecutes error.

We need not determine whether the trial court erred in requiring the plaintiff to recast the petition, for the order was complied with, and the controversy can be tried upon the new pleading as well as upon the one it superseded. The important question to be decided is whether the statute of limitation applies to an action of this character.

"It is universally held by courts that no statute of limitations will run against the state or the sovereign authority unless the statute itself expressly so provides, or unless the implications of the statute to that effect are so strong as to be utterly unavoidable." (*The State v. School District*, 34 Kan. 237, 242, 8 Pac. 208.) (See, also, *The State v. Book Co.*, 69 Kan. 1, 76 Pac. 411, 1 L. R. A., n. s., 1041.)

And it is generally held that the same immunity attaches to subordinate political divisions of the state, including municipal corporations, whenever the character of the litigation is such that the reasons for the exemption apply with substantially equal force. The following are illustrative statements of the rule:

"The general rule is that statutes of limitations run not only for but against municipalities, except in liti-

gation respecting public rights, or property held upon a public trust." (25 Cyc. 1009.)

"The better rule seems to be that where a municipality seeks to assert rights which are of a public nature and such as pertain purely to governmental affairs, the exemption in favor of sovereignty applies and the statute of limitations will not constitute a bar unless it is expressly so provided." (19 A. & E. Encycl. of L. 191.)

"The statute does not run against the state unless expressly so provided, and all doubts as to whether it does so run are to be resolved in favor of the state. This rule extends to minor municipalities created as local governmental agencies in respect to governmental affairs affecting the general public." (8 Cur. Law, 770.)

In an elaborate note upon the general subject of the maxim, "Lapse of time does not bar the right of the crown," in 101 Am. St. Rep. 144, its application to public bodies other than the state is fully considered. The authorities there gathered show that while the broad statement is often made that statutes of limitation run against municipal corporations in the same manner as against individuals, the distinction noted, based upon the character of the right asserted, is generally recognized. The courts, however, are not in harmony as to its precise scope or the reasons for it. In *Ralston v. Town of Weston,* 46 W. Va. 544, 33 S. E. 326, 76 Am. St. Rep. 834, it was held, overruling three earlier decisions, that an action by a municipality for the recovery of possession of ground claimed as a street was not barred by lapse of time, even under a statutory provision that "every statute of limitation, unless otherwise expressly provided, shall apply to the state." (W. Va. Code, 1906, § 1137.) The court said:

"That the statute of limitations applies to municipal corporations there can be no question; that it now applies to the state in like manner as to individuals, by express statutory provision, there can be no question; but it does not apply to the sovereign rights of the

people, except as they are restricted in the constitution by their manifest will therein contained. . . . The state is not the sovereign in this country. The people who make it are sovereign, and all its officers are but their servants. So statutes of limitations which are made to apply to the state do not apply to the people or their public rights. But they only apply to the state in the same cases that they apply to individuals. The entry upon, or recovery of, lands held for sale, suits on bonds, contracts, evidences of debt, or for torts—all these, though the state is a party, are subject to bar. As to all such things, there is no reason why the state should have any longer time than an individual. Such is not the case with the right of taxation, the right of eminent domain, the right to use the public highways, and other rights which pertain only to the sovereignty of the people. None of these can ever be lost by the negligence of the public servants, who have no power of disposal over them in any way whatever, except according to the express will of the people." (Pages 547, 549.)

In *United States v. McElroy,* 25 Fed. 804, the view was taken that under some circumstances the lapse of time might operate to bar a claim of the general government, the court saying:

"It may . . . be conceded that neither the statute of limitations nor laches bars the government as to any claim for relief in a purely governmental matter; but when the government comes as a complainant into a court of equity, asserting the same rights as a private individual—a mere matter of dollars and cents, involving no questions of governmental right or duty— it seems that, although technically the statute of limitations may not bar, the ordinary rules controlling courts of equity as to the effect of laches should be enforced." (Page 804.)

This case, however, was reversed by the supreme court. (*United States v. Insley,* 130 U. S. 263, 9 Sup. Ct. Rep. 485, 33 L. Ed. 968.) A very satisfactory expression of the rule is found in *Simplot v. Chicago, M.*

*& St. P. Ry. Co.,* 16 Fed. 350, 5 McCrary, 158, in these words:

"The true rule is that when a municipal corporation seeks to enforce a contract right, or some right belonging to it in a proprietary sense, or, in other words, when the corporation is seeking to enforce the private rights belonging to it, as distinguished from rights belonging to the public, then it may be defeated by force of the statute of limitations; but in all cases wherein the corporation represents the public at large or the state, or is seeking to enforce a right pertaining to sovereignty, then the statute of limitations, as such, can not be made applicable.

"In the latter cases, the courts may apply the doctrine or principle of an estoppel, and by means thereof, where justice and right demand it, prevent wrong and injury from being done to private rights." (Page 361.)

A summary of the doctrine discussed is thus stated by the author of the note referred to:

"Theoretically, the rule that statutes of limitation do not run against governmental bodies when asserting a public right or protecting property held for public use, and that such statutes do run against such bodies when asserting private rights or enforcing rights arising from out of ordinary business transactions, is sound. The rule is supported by the weight of authority, although there are some cases which seem to hold that the pecuniary interests of the United States are matters of sovereignty. The difficulty of any rule in regard to the subject lies in its application to the varied circumstances of each particular case. There are, of course, many circumstances under which it would be readily conceded that the governmental body is acting strictly in a sovereign capacity, but, on the other hand, there are many other circumstances when it seems to us that it is extremely doubtful whether the governmental body is acting in a strictly sovereign capacity in attempting to enforce alleged property rights. It would seem that when all the people of the United States or of the state (both of which seem to be recognized as representing the sovereignty) are interested in the subject-matter of the litigation, that there is no question about the maxim applying, but that when only a portion of the people of the state—

for instance, that part of the people residing in some minor subdivision of the state, such as a county or municipal corporation—are the sole parties interested in the subject-matter of the litigation, then the maxim does not apply.  It seems to be held by some of the courts that in so far as a municipal corporation acts merely for the benefit of the people within the limits of the municipality its actions are similar to those of a private corporation acting in the interest of its stockholders, and that as to such actions the municipality is bound to use the same degree of vigilance as a private corporation, but that when the municipality acts in regard to some matter or thing in which all the people of the state are interested, though, perhaps, in a lesser degree than the people within the limits of the municipality, it then acts as the representative of the sovereignty, and the maxim applies."    (101 Am. St. Kep. 184.)

The geographical or territorial test proposed may be helpful in some instances, and even determinative in certain classes of cases, but we doubt its universal applicability.  Inasmuch as the city exists in part as an agency of the state for general governmental purposes, and its maintenance depends upon its power to levy and collect taxes, it might be argued that the state itself, or the general public, has an interest in protecting the exercise of that power.  But the same argument might apply, although with less force, to the prosecution of any money demand, upon the ground that the purpose of enforcing it is to aid in meeting the expenses of maintaining the municipality.  We think the more vital consideration has relation to the character of the power in exercise of which the demand originates.  The power of taxation is an essential attribute of sovereignty.  This is true no less of taxes levied by minor political divisions than of those directly imposed by the state.  (27 A. & E. Encycl. of L. 620.)  No statute of limitation should apply to any step in the exercise of that power unless a legislative intention that it should do so is expressly stated or

appears by the clearest implication. In *The City of Burlington v. The B. & M. R. R. Co.*, 41 Iowa, 134, it was held that the recovery of city taxes by action was subject to the bar of the statute of limitations. But this excerpt from the opinion shows the grounds of the decision:

"The right of the city to maintain this action can only be supported upon the ground that the taxes are debts, properly held by it in its proprietary character. It appears in this action in that character, claiming to recover on the ground that the defendant is its debtor upon an obligation created by the assessment and levy of the taxes. In the debt thus created it has a right of property in its proprietary character." (Page 141.)

A tax is not ordinarily regarded as a "debt." (See note on recovery of personal judgment for taxes, 42 Am. St. Rep. 655.) The argument of the Iowa court seems to be that when the city chooses to collect its taxes through the courts it thereby elects to treat its claim as an ordinary contract obligation, and must submit to all the consequences of such election, one of which is that its demand must be considered as contractual for all purposes—including that of determining the effect of the statute of limitations. Even granting the soundness of this reasoning it does not necessarily reach the facts of the present case. Here the tax has been paid by the property owners, but its proper distribution is prevented by the misconduct of one of the agencies which the law has provided for that purpose. True, mandamus would doubtless lie against the county treasurer to compel a proper application of funds on hand, but if the money collected for the city has been diverted to the use of the county the present action, which is in effect for an accounting, seems to be an appropriate, if not the only adequate, remedy. (*Board of Education v. Spencer*, 52 Kan. 574, 35 Pac. 221.) The distribution is not required or expected to be made in the very moneys received. The matter is

Osawatomie v. Miami County.

largely one of bookkeeping. Although the county may have misappropriated the city's money, and thereby obliged the latter to sue for its recovery, the action is essentially to compel the performance of a public duty, and not to enforce a private contract.

In *State v. Mayor, etc., of City of Columbia* [Tenn. 1899], 52 S. W. 511, it was held that statutes of limitation barring taxes not collected or sued for within a stated time had no application to an action to recover an amount which the city received from taxpayers and wrongfully withheld from the state, the court saying:

"These statutes have reference only to suits or proceedings to collect taxes from the taxpayer, and do not apply to suits against persons who may get the revenue of the state in their possession, and who are by such suit called upon to restore the same to the state. And it is immaterial whether we view the city of Columbia as one who has converted the state's funds to its own use, or as one who holds a fund on which the state has a lien for its taxes and refuses to surrender it to the state, or as a person charged by law with collecting the state's funds of the character here involved, and who, having collected, refuses to account for and pay over the fund to the state. The result is the same in either view, so far as concerns the statute of limitations. They do not apply in either event."

The present controversy involves no element of private contract. It does not concern the vindication of any private right. It is between public officers or public bodies with respect to the performance of a public duty, in which the people of the state at large have at least an indirect interest. It is not affected by mere general provisions of the statute, and no statutory limitation is made to apply to it either in express terms or by necessary implication. This conclusion is in keeping with what has been said on the subject by courts generally, and by this court so far as the matter has been touched upon. The authorities are so fully collected in the note already referred to (101 Am. St. Rep. 144) as to make additional citation unnecessary.

The judgment is reversed and the case remanded, with directions to overrule the demurrer to the amended petition.