THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF SEDGWICK, STATE OF KANSAS, *Appellant*, v. PAUL C. LEWIS, MARK E. LEWIS, CHARLES F. LEWIS, TED C. LEWIS, PAUL K. LEWIS, WILLIAM LEWIS, and DON E. LEWIS, a Co-Partnership Doing Business Under the Firm Name and Style of Lewis Brothers Hardware and Lesco Supply Company, *Appellees*.

(453 P. 2d 46)

Opinion filed April 12, 1969.

*Kenneth F. Beck,* of Wichita, argued the cause, and *Ernest McRae,* of Wichita, was with him on the brief for appellant.

*William C. Farmer,* of Wichita, argued the cause, and *Paul V. Smith, Douglas E. Shay, Leo R. Wetta, James R. Schaefer, Thomas A. Wood,* and *Larry L. Witherspoon,* of Wichita, were with him on the brief for appellees.

*Kent Frizzell,* Attorney General, *J. Richard Roth* and *Gary L. Rohrer,* Assistant Attorneys General, were on the *Amicus Curiae* brief for the State of Kansas, in support of the appellant.

*Philip E. Buzick,* of Cosgrove, Webb & Oman, and *Harry W. Colmery,* of Colmery, Davis, Bennett, Leonard & McClure, of Topeka, and 30 other named attorneys were on the *Amicus Curiae* brief of American Oil Company, American Petrofina Co. of Texas, Apco Oil Corporation, Colorado Oil and Gas Corporation, Farmland Industries, Inc., Phillips Petroleum Company, Skelly Oil Company, Mobil Oil Corporation, Union Asphalts and Road Oils, Inc., and Wilshire Oil Company of Texas, in support of the appellees.

The opinion of the court was delivered by

FATZER, J.: This action was brought pursuant to K. S. A. 19-232 to recover from the appellees overcharges and penalties for materials and supplies purchased from them by the appellant, the Board of County Commissioners of Sedgwick County. The record discloses the materials purchased were for use by the county in the maintenance of its roads and bridges, and for fire control equipment.

The overcharges occurred in the years 1961 and 1962. No demand was made until April 15, 1965, and suit was filed May 21, 1965. The district court granted summary judgment upon appellees' motion for the reason the provisions of K. S. A. 60-514 (3) were applicable to the factual situation in the case, and the action was barred by the statute of limitations.

Application of the general statutes of limitations to the state, its political subdivisions and agencies is the subject of specific legislation in K. S. A. 60-521, which reads:

*"As to any cause of action accruing to the state, any political subdivision, or any other public body, which cause of action arises out of any proprietary function or activity, the limitations prescribed in this article shall apply to actions brought in the name or for the benefit of such public body in the same*

*manner as to actions by private parties,* except in (1) actions for the recovery of real property or any interest therein, or (2) actions to recover from any former officer or employee for his own wrongdoing or default in the performance of his duties." (Emphasis supplied.)

The provisions of K. S. A. 60-514 (3) found applicable by the district court, read:

"The following actions shall be brought within one (1) year . . . (3) An action upon statutory penalty or forfeiture."

Did the district court err in holding the appellant's cause of action was barred by K. S. A. 60-514 (3), or to put it another way, did the cause of action arise out of the performance of any proprietary function or activity within the meaning of 60-521?

The law as it relates to the application of the general statutes of limitations on actions brought by the state, its agencies or subdivisions has been stated many times. The early case of *State v. School District,* 34 Kan. 237, 8 Pac. 208, was an action against the school district to recover on school district bonds and accompanying coupons, and it was held:

"A statute of limitations will not run against the state or the sovereign authority unless the statute itself expressly so provides, or unless the implications of the statute to that effect are so strong as to be utterly unavoidable; and even where the state holds the claim or debt sued on, as the assignee or transferee of some individual person, still such statute of limitations will not run against the state where such statute had not commenced to run before the state obtained the claim or debt." (Syl. ¶ 3.)

As indicated, the case states the rule applicable in this jurisdiction that the statutes of limitations will not run against the state or the sovereign authority unless the statute itself expressly so provides. In the instant case, the statute (19-232) under which the action is brought, makes no reference to the applicability of the general statutes of limitations, nor does it state implicitly or by reference or by implication that any limitation statute shall apply. The statute reads:

"All fees, costs or other allowances, or any fees obtained from or allowed against any county, when the same are not authorized by law, and not refunded on demand, may be recovered back in a civil action, in the name of the proper county, in any court of competent jurisdiction; and on the rendering of the judgment in any such case, the justice or the court rendering the same shall add one hundred percent to the same, to go to the county, and also a fee of ten dollars if in a justice's court and twenty-five dollars if in the district court, to go to the county attorney or other person prosecuting the same."

In *Osawatomie v. Miami County*, 78 Kan. 270, 96 Pac. 670, the city commenced an action against the county to recover certain taxes. The county had retained and diverted part of the taxes levied by the city to its own treasury. It was held:

"The rule that statutes of limitations do not apply to actions by the state unless a legislative intention that they shall do so is shown by express language or appears by the clearest implication also applies to subordinate political bodies, including municipal corporations, *with respect to any litigation to enforce governmental rights.*" (Syl. ¶ 1.) ( Emphasis supplied.)

The opinion reaffirmed the rule set forth in *State v. School District*, supra, but made it applicable not only to the state but to political subdivisions such as counties, with respect to any litigation to enforce governmental rights. See *Smith v. Higgins*, 149 Kan. 477, 87 P. 2d 544.

In *Thomas v. Ellis County*, 91 Kan. 443, 138 Pac. 409, it was held:

"Counties are mere auxiliary agencies of the state government, and, like the state, are immune from liability on account of damages occasioned by the manner in which they exercise or fail to exercise their governmental powers." (Syl. ¶ 1.)

In this state each organized county is a body corporate and politic (K. S. A. 19-101) and is created for the purpose of convenient local government and exists only for public purposes connected with the administration of state government. A county is merely part of the governmental machinery employed in carrying on the affairs of the state and has no power except such as is given it for public purpose by the Legislature, except as it may be restricted by the state Constitution. (*Harling v. Wyandotte County Comm'rs*, 110 Kan. 542, 204 Pac. 763; *Osborne County v. City of Osborne*, 104 Kan. 671, 673, 180 Pac. 233.)

In *Jackson County v. Kaul*, 77 Kan. 715, 96 Pac. 45, it was said:

"Counties are mere political subdivisions of the state. (*Commissioners of Shawnee County v. Carter*, 2 Kan. 115.) They are mere instrumentalities of the state in the exercise of its governmental functions, and are given corporate power only so far as may be necessary to aid those functions. They are only *quasi*-corporations (*Comm'rs of Neosho Co. v. Stoddart*, 13 Kan. 207, 210; *Freeland v. Stillman*, 49 Kan. 197, 207, 30 Pac. 235; *In re Dalton*, 61 Kan. 257, 264, 59 Pac. 336, 47 L. R. A. 380; *The State v. Wilson*, 65 Kan. 237, 238, 69 Pac. 172), and are clearly distinguished from municipal organizations like cities, which are given far greater powers and are endowed with much larger measures of corporate life. (1 Dill. Mun. Corp., 4th ed., § 25; 11 Cyc. 341 *et seq.*) . . ." (l. c. 719.)

A county is a *quasi*-corporation and not a corporation as is a city. The distinction was pointed out and commented upon by Mr. Justice Brewer in *Beach v. Leahy,* 11 Kan. 23, and that distinction has subsequently been referred to and affirmed. (*State, ex rel., v. Comm's of Pawnee County,* 12 Kan. 426, 439; *Eikenberry v. Township of Bazaar,* 22 Kan. * 255, * 258, 31 Am. Rep. 198; *County of Marion v. Riggs,* 24 Kan. * 255, * 258; *Pfefferle v. Comm'rs of Lyon Co.,* 39 Kan. 432, 436, 18 Pac. 506; *State, ex rel., v. Wyandotte County Comm'rs,* 140 Kan. 744, 748, 39 P. 2d 286.)

In *Smith v. Higgins,* supra, it was said:

". . . In many decisions this court has discussed the nature of the county and has often called attention to distinctions between counties and cities as legal entities. The county is not a corporation in any ordinary sense. It has at times been designated as an 'involuntary quasi corporation.' It is an arm and agent of the state set up to perform certain governmental and political functions. As such it partakes of the immunity which inheres in state sovereignty . . ." (l. c. 479.)

Moreover, the political and governmental functions and activities of organized counties do not partake at all of a private character. In exercising the powers conferred by the Legislature, counties are not engaged in the performance of a business transaction, nor do they act for the purpose of increasing the wealth of the county as a body corporate, nor do they provide any proprietary service to their inhabitants. (*Pfefferle v. Comm'rs of Lyon Co.,* supra, p. 436.) In short, a county is not a corporate entity in the sense of being a business corporation for private purposes or for pecuniary gain or profit. In *Silver v. Clay County,* 76 Kan. 228, 91 Pac. 55, it was held:

"Counties are involuntary *quasi*-corporations and are mere auxiliaries to the state government and partake of the state's immunity from liability. *They are in no sense business corporations."* (Syl. ¶ 1.) (Emphasis supplied.)

That rule has been stated and affirmed in *Gray v. Sedgwick County,* 101 Kan. 195, 165 Pac. 867; *State Highway Comm. v. Puskarich,* 148 Kan. 388, 391, 83 P. 2d 132, and *Caywood v. Board of County Commissioners,* 194 Kan. 419, 421, 399 P. 2d 561.

The *Caywood* case presented the question whether Sedgwick County was immune from liability for its alleged negligence in the operation of a recreational area it established and maintained. In the opinion it was stated:

"We consider it unnecessary here to enter into a discussion of the long established rule in this state pertaining to the liability or nonliability of a city

for negligence—depending upon whether at the time the city was engaged in a 'proprietary' or 'governmental' function. A thorough discussion is found in *Krantz v. City of Hutchinson, et al.*, 165 Kan. 449, 196 P. 2d 227, 5 A. L. R. 2d 47, and *Wendler v. City of Great Bend*, 181 Kan. 753, 316 P. 2d 265.

"Counsel for plaintiff have cited us no case from this jurisdiction where— with respect to liability of a county for negligence—a distinction has been made between governmental and proprietary functions, and research has failed to disclose any such decision. . . ." (l. c. 421.)

This court held that the county was not liable for damages for negligence unless liability was expressly imposed by statute, because the county like the state partakes of the state's immunity.

The recent case of *McCoy v. Board of Regents*, 196 Kan. 506, 413 P. 2d 73, involved an action to recover damages for personal injuries sustained by the plaintiff while a patient in the University of Kansas Medical Center, and it was held:

"The rule applying governmental-proprietary distinction to the functions of municipalities in determining liability for damages for negligence is irrelevant as to the functions of a state agency." (Syl. ¶ 2.).

In the opinion it was said:

"Plaintiff's contention that the operation of the Medical Center by defendants constitutes a proprietary, as opposed to a governmental, function is irrelevant to the issue under consideration. *The governmental-proprietary distinction relating to municipal immunity has never been applied to activities of a state agency in this jurisdiction.* The state is the fountainhead of governmental immunity. The immunity of subordinate branches of the government stems from the state. As long as a subordinate branch of the state performs governmental and political functions set up and imposed by the state, then such branch partakes of the immunity which inheres in state sovereignty. (*Smith v. Higgins*, 149 Kan. 477, 87 P. 2d 544.) *A city, unlike a county is authorized to voluntarily pursue functions beyond those governmental and political functions imposed upon it as a branch of the state government.* Generally when such proprietary functions are pursued by a municipality it moves out from under the cloak of immunity from tort liability stemming from the state. Cases demonstrating the application of the governmental-proprietary function relating to municipal immunity have been thoroughly catalogued in our recent decisions of *Parker v. City of Hutchinson*, supra, and *Caywood v. Board of County Commissioners*, supra. The distinction is inapplicable to the state agency function under consideration herein and further discussion is unnecessary." (l. c. 511.) (Emphasis supplied.)

It is apparent that the *Caywood* and the *McCoy* cases complement a long line of decisions establishing the general proposition that counties are mere administrative extensions of the state itself, and are not "municipal corporations" in the same sense as are the cities, which are given far greater powers and are endowed with

much larger measurers of corporate life. It follows that counties, being agencies of the state, partake of attributes of the state itself insofar as the application of the doctrine of sovereign immunity, the statute of limitations, and particularly the lack of ability to engage in proprietary functions and activities. See *Jackson County v. Kaul,* supra; *Thomas v. Ellis County,* supra; *Harling v. Wyandotte County Comm'rs,* supra, and *State, ex rel., v. Wyandotte County Comm'rs,* supra.

Applying the foregoing legal principles, it follows that 60-521 does not apply, nor was it intended to apply, to actions brought by the state or its subordinate political subdivisions such as counties, to enforce governmental rights. In the instant case, the county was not engaged in a proprietary function or activity—in fact and in law it could not engage in such a function or activity since there does not exist such a thing as a proprietary function at the state or county level.

The conclusion just announced decides this case. However, we note the materials and supplies purchased by the county in the instant case were for use in the road and bridge department and for fire control equipment. In *Ahrend v. City of Kansas City,* 173 Kan. 26, 243 P. 2d 1031, the court held that a city purchasing cement for the repair of its streets was acting in its governmental capacity and not in its proprietary capacity. In the opinion it was said:

"There is no question here but that this cement was to be used in the repair of the city streets. That the city is not liable for the negligence of its officers and employees while engaged in the repair of its streets is not open to question. (See *Parker v. City of Wichita,* 150 Kan. 249, 92 P. 2d 86; also *Rose v. City of Wichita,* 148 Kan. 317, 80 P. 2d 1078.) The procuring of the cement at the warehouse of Cooke & Company was incidental and a part of the work in which the city was engaged, that of repairing the city streets. It would be a strained construction to limit the nonliability of the city to the precise scene of the work. The driver of the truck was engaged in repairing the city streets as much when loading the cement at the warehouse as when he was unloading it at the place where the work was being done." (1. c. 29.)

Assuming, *arguendo,* that the governmental-proprietary distinction did exist in county functions and activities, the result would be the same. In building and maintaining public roads and bridges and in preventing fires in its yards and buildings, a county performs those functions as a subdivision of the state in its governmental capacity and the purchase of materials to be used for those purposes is a governmental function.

We hold that K. S. A. 60-521 has no application to the instant case. The authorities establish beyond question that the governmental-proprietary distinction does not apply to the state or to counties; and, further, it is a settled rule in this state that the purchasing of materials to be used in a governmental capacity is itself a governmental function.

It follows the district court erred in holding the cause of action was barred by 60-514 (3) and in granting the appellees summary judgment.

The judgment of the district court is reversed, and the cause is remanded to proceed to trial on the merits.