(578 P.2d 281)
No. 49,257

STATE OF KANSAS, *ex rel.,* CURT T. SCHNEIDER, Attorney General, *Appellant,* v. CHARLES M. MCAFEE, *Appellee.*

Petition for review denied September 26, 1978.

Opinion filed May 5, 1978.

*Donald Hoffman* and *Philip A. Harley,* Assistant Attorneys General, and *Curt T. Schneider,* Attorney General, for the appellant.

*H. E. Jones,* of Hershberger, Patterson, Jones & Roth, of Wichita, for the appellee.

Before FOTH, C.J., ABBOTT and PARKS, JJ.

PARKS, J.: This appeal stems from a controversy over the submission of deficient drawings and specifications for the McKnight Fine Arts Center at Wichita State University.

By the terms of a Memorandum of Appointment executed on January 6, 1971, the defendant, Charles McAfee, as associate architect, was to prepare plans, drawings and specifications to be used in the construction of the center.

In making its claim for damages, the state alleged that during the summer of 1972, the defendant delivered drawings and specifications which were inadequate and faulty. It is also alleged that he failed to correct the drawings after the deficiencies were brought to his attention. In order to correct the resulting constructional deficiencies, it was necessary to cut tunnels through poured concrete, install additional piping, re-route existing piping and reconstruct a penthouse structure which was to contain a multi-zone air handler.

The attorney general, as relator on behalf of the state of Kansas, filed this action in January, 1976, three and one-half years after the discovery of deficiencies in defendant's work product.

The trial court dismissed this action on the grounds that the activity of hiring an architect is proprietary in nature, the gravamen of the action sounded in tort, and the action was barred by the two-year statute of limitations. The state appeals.

At the outset we will consider whether statutes of limitation run against the state.

K.S.A. 60-521 deals with the applicability of the limitations of actions to public bodies:

"As to any cause of action accruing to the state, any political subdivision, or any other public body, which cause of action arises out of any proprietary function or activity, the limitations prescribed in this article shall apply to actions brought in the name or for the benefit of such public body in the same manner as to actions by private parties, except in (1) actions for the recovery of real property or any interest therein, or (2) actions to recover from any former officer or employee for his or her own wrongdoing or default in the performance of his or her duties."

In *State Highway Commission v. Steele,* 215 Kan. 837, 528 P.2d 1242 (1974), an action was brought by the State Highway Commission to recover damages to a bridge which was struck by an automobile owned by defendant Ethel E. Steele and driven by defendant Ronald W. Steele. The sole question was whether the action was barred by the two-year statute of limitations for tort set forth in K.S.A. 60-513(a)(4).

The *Steele* court made the following observations: K.S.A. 60-521 clearly makes a distinction between actions arising out of proprietary functions of public bodies and actions arising out of their governmental functions or activities with respect to the applicability of limitations (p. 838). Causes of action arising out of governmental functions are omitted from the text of K.S.A. 60-521, thus it is to be construed as excluding those actions which are not specified (p. 839).

The *Steele* court also pointed out that it has consistently held that statutes of limitation do not run against the state unless specifically provided by statute. See *Board of County Commissioners v. Lewis,* 203 Kan. 188, 453 P.2d 46 (1969); and *Riggan v. Director of Revenue,* 203 Kan. 129, 453 P.2d 52 (1969).

The conclusion to be drawn is that statutes of limitation do not run against the state when the action arises out of the performance of a governmental function.

We now turn our attention to the question of whether the hiring of an associate architect is a proprietary or a governmental function of the state.

Governmental functions are those which are performed for the general public with respect to the common welfare and for which no compensation or particular benefit is received, while proprietary functions are exercised when an enterprise is commercial in character or is usually carried on by private individuals or is for the profit, benefit or advantage of the governmental unit conducting the activity. *Brown v. Wichita State University,* 217 Kan. 279, 305, 540 P.2d 66 (1975) (Brown I); rehearing granted and opinion modified in *Brown v. Wichita State University,* 219 Kan. 2, 547 P.2d 1015 (1976) (Brown II) and cases cited therein.

The question of whether the contracting for incidental professional services is a proprietary or a governmental function was answered in *Wilcox v. Salt Lake City Corporation,* 26 Utah 2d 78, 484 P.2d 1200 (1971). There it was held that the city in contracting with doctors for examination of X-rays in connection with the city's annual renewal of waitresses' health permits was not acting in a proprietary capacity but in a governmental capacity.

Our Supreme Court held in *Board of County Commissioners v. Lewis,* supra, that in building and maintaining public roads and bridges a county performs those functions in its governmental capacity and the purchase of materials to be used for those purposes is a governmental function.

There is no question but that the state was performing its governmental function of providing public education when it exercised the powers conferred by the legislature to hire an associate architect pursuant to K.S.A. 75-5401, *et seq.* See *Smith v. Board of Education,* 204 Kan. 580, 584, 464 P.2d 571 (1970). The procuring of the architect's services is incidental to and a part of the state's overall duty to provide public education for the citizens of the state. We conclude that the hiring of the associate architect was a governmental function of the state.

The conclusion we have reached makes it unnecessary for us to consider the other points raised on appeal.

The judgment of the district court is reversed, and the cause is remanded with directions to proceed to trial on the merits.