The Honorable Sally Thompson State Treasurer Office of the State Treasurer 900 Jackson, Suite 201 Topeka, Kansas, 66612-1235
Dear Ms. Thompson:
As State Treasurer and chairperson of the Pooled Money Investment Board (PMIB), you have requested our opinion regarding the authority of the PMIB to enter into a liquidity agreement with the Kansas department of transportation (KDOT), whereby the PMIB would act as "liquidity provider" in connection with a proposed Adjustable Tender Highway Revenue Bond issue of KDOT in the approximate principal amount of $100,000,000.00 (the "Bonds").
As background information, you inform us that the structure of the bond issue as a multi-modal variable rate demand issue means that bond owners will have the option at various times to "put" or tender their Bonds for purchase. On any optional or mandatory tender date the Bonds will be remarketed to new purchasers by a remarketing agent employed by KDOT for that reason. You state that the purpose of the liquidity agreement is to provide a secure source of funds for the owners of tendered Bonds in an instance where the remarketing agent has been unable to remarket all or a portion of the tendered Bonds. In such an instance, the PMIB, acting through the State Treasurer's office, would step in and purchase the tendered Bonds using state moneys eligible for investment pursuant to K.S.A. 1993 Supp. 75-4209, as amended by L. 1994, ch. 105.
You further inform us that should the PMIB purchase any tendered but unremarketed Bonds, they will immediately be remarketed, if possible, and KDOT will agree to use its best efforts to remarket any such Bonds. If the Bonds purchased by the PMIB (the "Purchased Bonds") cannot be remarketed, the Purchased Bonds, while held by the PMIB would earn interest at a "Purchased Bonds Rate" which is higher than the interest rate on the Bonds if they were held by any other purchaser. The draft of the liquidity agreement provides that the Purchased Bonds Rate will increase if the rating of the Bonds should decline and will increase to a higher "Reversion Rate" if the PMIB holds the Purchased Bonds for longer than 90 days.
The questions you would like us to address are whether the PMIB has statutory authority to invest in KDOT bonds as an "investment" of eligible state moneys under the applicable statutes, whether the PMIB has authority to execute and deliver the liquidity agreement, and whether the term of the proposed liquidity agreement complies with statutory provision limiting investments by the PMIB to a term of four years.
Concerning the first question, K.S.A. 1993 Supp. 75-4209(a)(2)(c), as amended by L. 1994, ch. 105, sec. 4, authorizes the PMIB to invest and reinvest state moneys eligible for investment in "any state agency bonds or bond project." This section of the statute provides a clear statement of authority allowing the board to purchase KDOT or any other state agency bonds with state moneys eligible for investment. The quoted language was added by the 1994 legislature to clarify the authority of the PMIB to invest in state agency bonds. Before the 1994 amendment that section provided authority to invest in "state agency and SKILL act projects and bonds pursuant to K.S.A. 74-8920." The 1994 amendment clarifies that the PMIB may invest in state agency bonds unrelated to SKILL act projects, such as bonds issued by KDOT. The authority to purchase these bonds also clearly implies authority for the board to enter into contracts, including, presumably, liquidity agreements, to facilitate the purchase of such bonds.
Thus, the second question, whether the PMIB has authority to execute and deliver the liquidity agreement, must also be answered in the affirmative. While no specific statutory language exists directing the PMIB to enter into investment agreements, of which a liquidity agreement is one type, it is our opinion that the PMIB's authority to invest in state agency bonds necessarily includes authority to enter into a liquidity agreement. Kansas law recognizes implied powers of state officials and boards in administrative duties and functions. The general rule is that when powers of a public officer are expressly conferred the power is implied to take such reasonable means as may be necessary for the effective exercise of the powers conferred and the discharge of the duties imposed. See State ex rel., v. Younkin, 108 Kan. 634 (1921); Cityof Wichita v. Wyman, 158 Kan. 709 (1944) and Edwards County Comm'rs v.Simmons, 159 Kan. 41 (1944). In Younkin, supra, the Kansas Supreme Court said:
 "When the legislature confers power in general terms upon an official body, without prescribing the details for the exercise of that power, the courts will not be officious to interfere with the official body's discretionary methods of performing the public duty intended by the legislature in granting such powers." Younkin at 639.
The legislature has delegated the PMIB the primary responsibility for the management and investment of state moneys without prescribing specific details for the exercise of that authority. In accordance with the rule set forth above in Younkin, et al., the PMIB may appropriately enter into a liquidity agreement with KDOT which facilitates the Board's purchase of KDOT bonds.
Investment guidelines the board must utilize are set forth in K.S.A.75-4209(f). This section provides that, "(i)nvestments made by the board . . . shall be made with judgment and care, under circumstances then prevailing, which persons of prudence, discretion and intelligence exercise. . . ." The PMIB's "prudent person" standard is discussed in Attorney General Opinion No. 89-123. That opinion concerns K.S.A.68-2311(a) and the duty of the PMIB to invest moneys in the state freeway fund. The statute uses the same language as K.S.A. 75-4209(f) to describe PMIB's standard of care with respect to investments. Noting that the prudent person standard imposes a higher standard than the business care standard, the opinion concludes that a rate of return at below market rate does not make an investment imprudent under the prudent person standard, as long as the rate of return is reasonable.
The liquidity agreement is drafted in a manner so as to comply with PMIB's statutory investment limitations and prescribed standard of care concerning state moneys. Section 2.A of the Agreement contains the PMIB's agreement to purchase Remaining Bonds (defined in the liquidity agreement as those tendered bonds which have not been remarketed), and provides in pertinent part:
"The Liquidity Provider hereby agrees
 . . . to purchase Remaining Bonds as an investment of State moneys. . . . The PMIB finds that such investments of state moneys, if made under the terms and conditions of this Agreement, takes into consideration the safety of such investment as well as the probable income which will result from such investment and anticipates future circumstances in a manner which is prudent and which reflects the intelligence and discretion which the PMIB is required by law to execise in making investment decisions."
The "Purchased Bond Rates" and "Reversion Rate" are defined in the liquidity agreement and are higher than the rate of interest KDOT would pay on the bonds when held by any other purchaser. The higher rate of return is designed to take into account the fact that the probable safety of the investment in the bonds would likely be somewhat diminished if the bonds could not be remarketed within 90 days, and consequently assures the PMIB of a higher rate of return for the investment. The draft liquidity agreement also provides that KDOT will pay the PMIB an initial commitment fee at a rate equal to 0.01% of the total principal amount of the Bonds payable on the issue date of the bonds and an annual fee of 0.05% of the daily average amount of the commitment made under the liquidity agreement. These fees are to compensate the PMIB for providing the service of a liquidity facility.
Section 7(E) of the proposed agreement provides further protection for the PMIB's investment in the bonds by providing that KDOT will not issue any additional bonds payable out of the Revenues (as defined in the Bond resolution) or any part thereof when purchased bonds are outstanding.
All these provisions of the liquidity agreement are included to insure that at any time the bonds become purchased bonds, the PMIB has executed its "prudent person" responsibilities with respect to the investment of state moneys.
Finally, to address your third question, whether the term of the proposed liquidity agreement complies with statutory provision limiting investments by the PMIB to a period of four years, section 2(H) of the agreement provides in part:
 "If KDOT has not remarketed Purchased Bonds by the earlier of (i) the final date of this Agreement, (ii) the date on which an Alternate liquidity agreement is in force and effect, or (iii) ___ days from the date the series 1994B bonds became Purchased Bonds, the Purchased bonds shall be redeemed at the earliest of the dates set forth in (i), (ii), or (iii) of this paragraph as provided in section 2.03(d) of the seventh supplemental resolution."
This provision is designed to comply with the requirements of K.S.A. 1993 Supp 75-4209 (g), as amended, limiting investments made under the statute to a period not exceeding four years. To achieve this, the section provides for a mandatory redemption triggered in certain circumstances as follows: the maturity of any Purchased Bonds held by the PMIB will accelerate at (i) the end of the liquidity agreement term (which will not exceed four years), (ii) when an alternate liquidity agreement is delivered and in place or (iii) when the PMIB has held Purchased Bonds for a specified period of time. A definition of "final date" for the liquidity agreement provides that the liquidity agreement will terminate four years after the date the bonds are issued, provided that the term of the liquidity agreement may be extended by consent of the PMIB for successive one year terms on each anniversary date, so that the liquidity agreement will never have a term of longer than four years. This "evergreen" provision permits the liquidity agreement to remain available for the 20 year term of the Bonds without being in violation of the four year investment period limitation.
You note that it is the intention of both KDOT and the PMIB that the liquidity support necessary to market the Bonds will be available throughout the 20 year term of the Bonds, as long as the Bonds remain in a variable interest rate mode which does not extend beyond the term of the liquidity agreement at the time the mode is selected. This raises the question of the ability of the current members of the PMIB to bind their successors. The general rule concerning this issue is that a contract made by a governmental authority involving performance ofgovernmental functions may not go beyond the unexpired terms of governmental officials executing the contract, but a contract involvingproprietary functions of a governmental body may bind successors for as long a period as is necessary to accomplish the contract's goals. A commitment relating to proprietary functions and which is reasonably necessary to the interest or affairs being administered is generally upheld. See Zerr v. Tilton, 224 Kan. 394 (1978) and Rhode Island StudentLoan Authority v. NELS, Inc., 550 A.2d 264 (R.I. Sup.Ct. 1988). The Kansas Court of Appeals distinguished governmental and proprietary functions in Schneider v. McAfee, 2 Kan. App. 2d 274 (1978) as follows:
 "Governmental functions are those which are performed for the general public with respect to the common welfare and for which no compensation or particular benefit is received while proprietary functions are exercised when an enterprise is commercial in character or is usually carried on by private individuals or is for the profit, benefit or advantage of the governmental unit conducting the activity." Schneider at 276.
Under this test the liquidity agreement would appear to be a proprietary rather than a governmental function. The liquidity agreement creates an investment which will be to the benefit and advantage of the PMIB. If the PMIB acquires Purchased Bonds, the rate of return established by the liquidity agreement will provide "compensation and particular benefit" to the PMIB. The PMIB is also compensated for the provision of the service of providing liquidity, an activity that is usually carried on by private entities. KDOT obtains the "particular benefit" of being able to structure the Bonds in a cost-effective manner with liquidity backing that is less expensive than if KDOT were to obtain such services in the private sector.
The PMIB has clear statutory authority to purchase any KDOT Bonds, and therefore has authority to purchase KDOT Bonds that may be available to the Board pursuant to a liquidity agreement the Board enters into with KDOT. It is our opinion that the liquidity agreement as drafted, provides reasonable and adequate safeguards to ensure that any PMIB investment in tendered KDOT Bonds is in compliance with the statutory investment guidelines set forth in K.S.A. 75-4209(f). The liquidity agreement will never have a term of longer than four years and no bond purchased by the PMIB under the liquidity agreement may be held for longer than four years in compliance with applicable statutory requirements.
The liquidity agreement represents an investment of eligible state moneys as authorized by K.S.A. 1993 Supp. 75-4209, as amended by L. 1994, ch. 105.
Very truly yours,
 ROBERT T. STEPHAN Attorney General of Kansas
 Rebecca E. Floyd Assistant Attorney General
RTS:REF:jm