**IN RE: Dan Henry OLIVER, Jr., Debtor.**

**State of Kansas, ex rel, Lana Gordon, Secretary of Labor, Plaintiff,**

**v.**

**Dan Henry Oliver, Jr., Defendant.**

Case No. 15–40880
Adv. No. 15–7038

United States Bankruptcy Court, D. Kansas.

Signed January 20, 2016

**424**

Thomas Britt Nichols, Kansas Dept. of Labor, Topeka, KS, for Plaintiff.

Frank D. Taff, Topeka, KS, for Defendant.

### Order Denying Defendant's Motion to Dismiss

Janice Miller Karlin, United States Bankruptcy Judge

Plaintiff Kansas Department of Labor ("KDoL") seeks a declaratory judgment that its claim against Defendant/Debtor Dan Henry Oliver, Jr., arising from an administrative determination that Debtor fraudulently received unemployment insurance benefit overpayments ("unemployment benefit overpayments"), is nondis-

chargeable. Debtor moves to dismiss KDoL's complaint under Fed. R. Civ.P. 12(b)(6)[1] for failure to state a claim upon which relief can be granted, arguing that the statute of limitations governing KDoL's claim has expired. The Court concludes that the Kansas unemployment benefit statute[2] does not contain a statute of limitations barring KDoL from seeking nondischargeability of its debt. Therefore, Debtor's motion to dismiss KDoL's complaint is denied.

### I. Factual and Procedural History

KDoL filed its complaint on November 28, 2015, alleging that Debtor engaged in intentional and willful misrepresentations regarding his employment status, and, by doing so, obtained improper unemployment benefits from the state of Kansas. KDoL requested the Court find its claim arising from Debtor's receipt of unemployment benefit overpayments to be nondischargeable under 11 U.S.C. § 523(a)(2)(A)[3] due to the alleged misrepresentations.

According to KDoL, over a period of three months in 2008, Debtor applied for and received approximately $5000 in unemployment benefits from the state. KDoL's records reflect that during this time, Debtor reported $0.00 wages per week, when he was actually employed by Shawnee County, Kansas. Relying on Debtor's reporting, KDoL paid out $385 a week for fourteen weeks. About six months later, KDoL investigated whether Debtor had fraudulently obtained those benefits. In June, 2009, KDoL issued a final administrative order finding that Debtor willfully and knowingly failed to

---

**1.** Rule 12 is made applicable to bankruptcy by Fed. R. Bankr. P. 7012.

**2.** K.S.A. §§ 44–701 to 770.

**3.** For the remainder of this decision, all references to the Bankruptcy Code (Title 11) will be to section number only.

report his correct earnings while requesting unemployment benefits and had thus fraudulently received those benefits.[4]

KDoL then sent a letter informing Debtor of this determination and stated that Debtor would be disqualified from receiving benefits from April 12, 2009 to April 17, 2010. KDoL also informed Debtor that he had sixteen days to appeal the determination before it became final. Debtor did not appeal the determination, nor has it been reversed, modified, or set aside.

Debtor filed his bankruptcy case on September 1, 2015, over six years after KDoL's final order. During that time, KDoL took no further actions to pursue its claim against Debtor. Debtor listed KDoL on Schedule F as a nonpriority, unsecured claim, and KDoL seeks a determination that its claim (which it indicates

now stands at $10,583.88)[5] is nondischargeable.[6]

Debtor responded to KDoL's complaint by filing a motion to dismiss alleging that the statute of limitations had run on the underlying debt. Debtor's motion does not dispute the relevant facts at issue.

The Court has jurisdiction to hear this motion under 28 U.S.C. §§ 157, 1334. The determination of dischargeability of a debt is a core proceeding under 28 U.S.C. § 157(b)(2)(I) and this district is the proper venue under 28 U.S.C. § 1409.

## II. Analysis

### A. Standard for Considering a Rule 12(b)(6) motion to dismiss

To survive a Rule 12(b)(6) motion to dismiss on statute of limitations grounds, a complaint must contain sufficient facts to allow a court to reasonably infer that a defendant's liability is not time-barred.[7]

---

4. KDoL's complaint states that the examiner's determination establishing the overpayment was "made and entered" on June 1, 2009. Doc. 1, at p. 8. However, the letter attached to the complaint is dated June 30, 2009. Doc. 1, Ex. B. The complaint nor any of the subsequent pleadings in this adversary clarify which date the examiner's determination was actually made. However, in a pleading in Debtor's main case, Case No. 15-40880, KDoL references a final administrative order issued June 30, 2009 and does not allege any action taken against Debtor on June 1, 2009. Doc. 23, at p. 2. As the date of the letter is not dispositive of the statute of limitations issue, the Court declines to decide for KDoL which date marks the final order establishing Debtor's liability for overpayments.

5. This amount represents Debtor's outstanding balance consisting of principal ($4,872) and interest through the end of October, 2015 ($5,711.88).

6. Subsequent to the filing of KDoL's complaint, Debtor objected to KDoL's proof of claim in his main case. See Case. No. 15-40880, Doc. 22. KDoL's proof of claim reflects $24,592.73 total in benefit overpayments, partially secured by a statutory lien on

Debtor's real and personal property located in Leavenworth County, Kansas. In its response to Debtor's objection to its proof of claim, KDoL refers to two final administrative orders determining Debtor's liability for benefit overpayments—one from June 26, 2009 for the weeks starting November 8, 2008 and ending May 16, 2009; the other from June 30, 2009, described above. See Doc. 23. KDoL's complaint limits its request for relief to the actions leading to and the debt following the June 30, 2009 letter, and the Court will not consider any extrinsic facts alleged in pleadings in Debtor's main case. See *Thompson v. Ill. Dep't. of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir.2002) ("The consideration of a 12(b)(6) motion is restricted solely to the pleadings, which consist generally of the complaint, any exhibits attached thereto, and supporting briefs.") (cited by *Janes v. Lyons (In re Lyons)*, No. 09–22773, 2010 WL 1257746, at *2 (Bankr.D.Kan. Mar. 26, 2010)).

7. See *Harris v. City of New York*, 186 F.3d 243, 251 (2d Cir.1999) ("[T]he survival of a Rule 12(b)(6) motion to dismiss on statute of limitations grounds requires only allegations consistent with a claim that would not be time-barred."); *In re Lyons*, 2010 WL

The Court's analysis is limited to those facts contained in the pleadings, including exhibits,[8] and the Court accepts all well-pleaded facts as true and construes them in the light most favorable to KDoL.[9]

■ Section 523(a)(2)(A) excepts from discharge any debt for money, property, or services obtained by false pretenses, false representations, or actual fraud.[10] In an action for a determination of nondischargeability under § 523(a)(2)(A), a complaint must include facts showing that: "(1) the debtor made a false representation; (2) the debtor intended to deceive the creditor; (3) the creditor relied on debtor's conduct; (4) the creditor's reliance was justifiable; and (5) the creditor was damaged as a proximate result."[11]

### B. Statute of Limitations Determination in a Nondischargeability Action under § 523(a)(2)(A)

■ To assess whether a statute of limitations bars KDoL's complaint, the Court must first determine whether an established debt exists. The Tenth Circuit, in *Resolution Trust Corp. v. McKendry (In re McKendry)*, formulated the issue in this way:

"We ... find two distinct issues in a nondischargeability proceeding. The first, the establishment of the debt itself, is governed by the state statute of limitations—if suit is not brought within the time period allotted under state law, the debt cannot be established. However, the question of the dischargeability of the debt under the Bankruptcy Code is a distinct issue governed solely by the limitations periods established by bankruptcy law."[12]

The question facing the Tenth Circuit in *McKendry* was "where a debt has been reduced to judgment in state court, can the bankruptcy court be barred by a state statute of limitations from considering the underlying nature of the debt in determining whether the debt is dischargeable."[13] In that case, the creditor had obtained a deficiency judgment from a state court a week prior to the debtor filing for bankruptcy, then sought to have the judgment debt determined nondischargeable by the bankruptcy court under § 523(a)(2).[14] The debtor argued that the creditor's nondischargeability action was barred by the state statute of limitations for fraud actions, which had expired. The Tenth Circuit concluded that "the debt ha[d] already

1257746, at *2 ("To survive a Rule 12(b)(6) motion to dismiss, ... a complaint must contain sufficient factual allegations to state a plausible claim to relief. A claim is plausible when plaintiff pleads sufficient facts to allow the court to reasonably infer the defendant is liable for the alleged conduct.").

8. *See Thompson*, 300 F.3d at 753 ("The consideration of a 12(b)(6) motion is restricted solely to the pleadings, which consist generally of the complaint, any exhibits attached thereto, and supporting briefs.") (cited by *In re Lyons*, 2010 WL 1257746, at *2).

9. *See In re Lyons*, 2010 WL 1257746, at *2 (citing *Lawrence Nat'l Bank v. Edmonds (In re Edmonds)*, 924 F.2d 176, 180 (10th Cir.1991))

("In considering a motion to dismiss, the Court accepts all well-pleaded factual allegations, as opposed to conclusory legal allegations, as true and construes them in the light most favorable to the plaintiff.").

10. § 523(a)(2)(A).

11. *Ez Loans of Shawnee v. Hodges (In re Hodges)*, 407 B.R. 415, 419 (Bankr.D.Kan. 2009) (citing *In re Davis*, 246 B.R. 646, 652 (10th Cir. BAP 2000)).

12. 40 F.3d 331, 337 (10th Cir.1994).

13. *Id.* at 334.

14. *Id.* at 333.

been established, so the state statute of limitations [was] immaterial."[15]

The crux of Debtor's motion to dismiss KDoL's complaint relates to the first prong of the *McKendry* analysis: was the debt "established" prior to the expiration of time under the applicable Kansas statute of limitation? To answer, the Court must discern what, if any, statute of limitations applies to the collection of debt incurred by an unemployment benefit overpayment.

KDoL argues that the Kansas unemployment benefit statute does not include a "statute of limitations to time-bar the collection or recovery of UI [unemployment insurance] overpayments."[16] KDoL does not contend that the Kansas unemployment benefit statute explicitly states that there is no time limit to the recovery of an overpayment, but argues that the absence of any mention of a time limitation evidences the legislature's intention to allow recovery of overpayment indefinitely. To support this interpretation, KDoL points to other time-based process deadlines (length of time to appeal, etc.) included in the Kansas unemployment benefit statute. In other words, the creation of time limits for some actions under the Kansas unemployment benefit statute necessarily implies that the absence of limitations for collection actions allows for collection at any time now or in the future.

Debtor argues that KDoL's claim arises out of the penalty section for benefit overpayments in K.S.A. § 44–719(a), which reads, in pertinent part: "Any person who makes a false statement or representation knowing it to be false ... to obtain or increase any benefit or other payment under this act, ... shall be guilty of theft and shall be punished in accordance with the provisions of K.S.A.2013 Supp. § 21–5801...." Section 21–5801 is a statute outlining the punishment for criminal theft.[17] As the penalty for unemployment benefit overpayments is criminal, so Debtor argues, it must be controlled by the time limitations for prosecution, which is five years.[18] As an initial matter, the Court rejects Debtor's theory that the criminal prosecution statute of limitations applies in this case. Dischargeability determinations concern only civil liability, and thus the Court's analysis is narrowed to those limits placed on civil actions.

Debtor's reply also argues that KDoL is barred from collecting benefit overpayments by the statute of limitations for civil actions, as applied to public bodies through K.S.A. § 60–521. Section 60–521 states that the statutes of limitation for civil actions[19] apply to "any cause of action accruing to the state, ... which ... arises out of any proprietary function or activity ...,"[20] Debtor's reply cites to three cases purporting to establish that KDoL's pur-

---

**15.** *Id.* at 337.

**16.** Doc. 7, at p. 11.

**17.** K.S.A. § 21–5801(b)(3) ("Theft of: ... property or services of the value of at least $1,000 but less than $25,000 is a severity level 9, nonperson felony....").

**18.** K.S.A. § 21–5107(d) ("[A] prosecution for any crime ... shall be commenced within five years after it is committed.). Defendant also argues that prosecution under K.S.A. § 44–719(f)(4)(A) is barred by the statute of limitations on prosecutions. Subsection (f)(4)(A),

however, applies only to "an employing unit" subject to the requirements of K.S.A. § 44–710a ("Employer contributions, liability for and payment of ....") and therefore would not apply to Debtor. K.S.A. § 44–719(f)(4)(A).

**19.** *See generally* K.S.A. §§ 60–511 to 516 (Kansas statutes of limitation for civil actions).

**20.** K.S.A. § 60–521.

suit of unemployment benefit overpayments constitutes a proprietary function under K.S.A. § 60–521.[21] In fact, Debtor cites to cases that point to the opposite conclusion. For example, Debtor cites to *State ex rel. Schneider v. McAfee*[22] which defines governmental functions and distinguishes them from proprietary functions, which "are exercised when an enterprise is commercial in character or is usually carried on by private individuals."[23] The Kansas Court of Appeals found *in McAfee* that "[g]overnmental functions are those which are performed for the general public with respect to the common welfare."[24] The management of the unemployment benefit system in Kansas is undoubtedly a function performed by the government to benefit the public welfare. Thus, as KDoL is not performing a proprietary function when collecting unemployment benefit overpayments, K.S.A. § 60–521 does not apply and KDoL is not barred by the statute of limitations for civil actions.[25]

Liability for benefit overpayments is determined by an examiner appointed under K.S.A. § 44–709. Examiners are responsible for both the initial determination that a claim is valid and for any reconsideration of the claim.[26] A decision by an examiner is final unless the claimant files an appeal within sixteen days.[27]

Section 44–719 describes the penalties for unemployment benefits ineligibly received. Subsection (d)(1) establishes civil liability for "any person who has received any amount of money as benefits under this act while any conditions for the receipt of benefits ... were not fulfilled."[28] Any such person is liable either "to have such amount ... deducted from any future benefits" *or* "to repay to the secretary ... an amount of money equal to the amount so received."[29] The Secretary of Labor has sole discretion to choose not just how the debt arising from the above-mentioned liability is collected, but also when.[30] Section 44–719(d)(1) is devoid of a period within which the Secretary of Labor must make a determination on how to collect on a debt arising from unemployment benefit overpayments.[31]

Indeed, it is telling that the only restriction included in this subsection impedes the Secretary of Labor's equitable power to waive collection for those overpayments *not* due to fraud, misrepresentation, or willful nondisclosure: the Secretary of Labor, after five years, *may* waive collection of unemployment benefit overpayments so long as they were not obtained through fraud and the collection would be against

---

21. See Doc. 8, at p. 2.

22. 578 P.2d 281, 283, 2 Kan.App.2d 274, 276 (Kan.Ct.App.1978).

23. *Id.*

24. *Id.; see also Kansas Pub. Emps. Ret. Sys. v. Reimer & Koger Assocs.*, 941 P.2d 1321, 1328–43, 262 Kan. 635, 644–669 (1997) (finding that the investment activity performed by the Kansas Public Employees Retirement System for the benefit of qualifying employees was a governmental function under § 60–521); *City of Lakin v. Kansas Sec. Bd. of Review,* 865 P.2d 223, 225, 19 Kan.App.2d 188, 190 (Kan. Ct.App.1993) (finding that the Kansas unemployment benefit statute "articulates our pub-

lic policy to be concerned with involuntary unemployment as a serious menace to the health, welfare, and morals of Kansans").

25. K.S.A. § 60–521.

26. K.S.A. § 44–709(b)(1) and (2).

27. *Id.*; K.S.A. § 44–709(b)(3).

28. K.S.A. § 44–719(d)(1).

29. *Id.*

30. *Id.*

31. *See id.*

equity or would cause extreme hardship.[32] The Secretary of Labor *may,* at any time, waive collection of unemployment benefit overpayments if, at the time those payments were received, the person met all the eligibility requirements under the law.[33] The option to waive collection is left to the sole discretion of the Secretary of Labor. Thus, though the Secretary of Labor may choose to waive collection for some overpayment liability, the statute provides she may *never* waive collection on those payments obtained by fraud— further supporting a reading that the legislature intended to give the Secretary of Labor broad rights in collecting unemployment benefit overpayments obtained through fraud.

In addition, K.S.A. § 44–719(d)(3) describes the ways in which the Secretary of Labor can collect from a liable individual. This subsection refers to K.S.A. § 44–717, which describes, in detail, the manner in which the Secretary of Labor can collect employer payments.[34] Included in this section are: state court collection actions, liens, levies, and seizures of property.[35] The authority granted under K.S.A. § 44–717 is self-effectuating and absent time limitations.[36]

Put together, the separate sections of the Kansas unemployment benefit statute do not limit the time in which an examiner can affix liability for unemployment benefit overpayments obtained through fraud nor do they limit, the ability of the Secretary of Labor to collect on said debt.

The complaint alleges that, in June, 2009, KDoL issued an order, pursuant to K.S.A. § 44–709(3), finding Debtor liable for approximately $5000 in unemployment benefit overpayments. Debtor declined to appeal this final order. Debtor argues that the order does not create liability for the amount owed without a state court judgment. The Court disagrees. Under K.S.A. § 44–717(b), KDoL is given the express right to collect on a liability determination by an examiner without first asking a state court for a judgment that an overpayment recipient is liable. Similarly, the legislature has authorized KDoL to record liens and levies and even seize property in order to satisfy a liability determination.[37] Thus, the legislature must have intended that an examiner's final liability determination for fraudulently received unemployment benefits be treated akin to a state court judgment establishing a debt. The basis for KDoL's claim, therefore, is identical in nature to the creditor's claim in *McKendry*—a state court judgment establishing a debt. In light of this analysis,

---

32. *See id.*

33. *See id.*

34. Though K.S.A. § 44–717 was not written to apply explicitly to individuals who have received overpayments, K.S.A. § 44–719(d) provides that overpayments "shall be collectible in the manner provided in K.S.A. § 44–717."

35. *See* §§ 44–717(b), (e)(1)–(3). Section 44–717(b)(1) ("Collection") refers to a five year time period within which "[a]ll liability determinations of contributions due ... shall be made ... except such determinations may be made for any time when an employer has filed fraudulent reports with intent to evade liability." (Emphasis added.) The term "liability determinations" is not defined, but stands in contrast to the phrase "collection by civil actions" referred to earlier in the section. Thus, the Court interprets the term "liability determination" to refer to the administrative process wherein an examiner validates a claim. *See* K.S.A. § 44–709(b) (describing the process through which claims are validated by an examiner). In addition, any liability based on fraudulent activity is not subject to a time limitation.

36. *See id.*

37. § 44–717(d)(1)–(3).

the Court finds that the first prong of the *McKendry* test is satisfied.

■ The second prong of the *McKendry* analysis requires a court to dismiss a non-dischargeability complaint if it is filed more than 60 days after the first scheduled meeting of creditors.[38] The first meeting of creditors in Debtor's underlying bankruptcy case was set for October 1, 2015.[39] Thus, the deadline for filing KDoL's complaint was November 30, 2015. As KDoL's complaint was filed on November 28, 2015, it was timely filed and satisfies the second prong of the *McKendry* analysis.

## III. Conclusion

KDoL's debt is established under state law and KDoL's complaint was timely filed under the Bankruptcy Code. The Court therefore denies Debtor's motion to dismiss for failure to state a claim. In his motion to dismiss, Debtor also requests the Court assess his attorney's fees against KDoL pursuant to § 523(d). As awards for attorney's fees are only available to a debtor if the Court discharges the debt and finds that the creditor's position was not substantially justified, the Court denies Debtor's request for attorney's fees.[40] Defendant is directed to file an answer to Plaintiff's complaint by February 3, 2016 pursuant to Fed. R. Bankr. P. 7012(a).

**It is so ordered.**

---

**38.** 40 F.3d at 337; Fed. R. Bankr. P. 4007(c).

**39.** Case No. 15-40880, unnumbered docket entry on September 1, 2015.

**40.** § 523(d); *see KC Coring & Cutting Constr., Inc. v. McArthur (In re McArthur)*, 391 B.R. 453, 459 (Bankr.D.Kan.2008) ("Damages under 11 U.S.C. § 523(d) are available only for discharged consumer debts and only if the court finds the creditor's position was not substantially justified.").